UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

_____

JAMES L. ALEXANDER; ALEXANDER & CATALANO LLC; and
PUBLIC CITIZEN, INC.,

        Plaintiffs,

   v.

THOMAS J. CAHILL, in his official capacity as Chief Counsel for the
Departmental Disciplinary Committee for the Appellate Division of the
New York Court of Appeals, First Department; DIANA MAXFIELD
KEARSE, in her official capacity as Chief Counsel for the Grievance
Committee for the Second and Eleventh Judicial Districts; GARY L.
CASELLA, in his official capacity as Chief Counsel for the Grievance
Committee for the Ninth Judicial District; RITA E. ADLER, in her
official capacity as Chief Counsel for the Grievance Committee for the
Tenth Judicial District; MARK S. OCHS in his official capacity as Chief
Attorney for the Committee on Professional Standards for the Appellate
Division of the New York Court of Appeals, Third Department;
ANTHONY J. GIGLIOTTI, in his official capacity as acting Chief
Counsel for the Grievance Committee for the Fifth Judicial District;
DANIEL A. DRAKE, in his official capacity as acting Chief Counsel for
the Grievance Committee for the Seventh Judicial District; and
VINCENT L. SCARSELLA, in his official capacity as acting Chief
Counsel for the Grievance Committee for the Eighth Judicial District,

                *Defendants.*

_____

5:07-CV-0118

(FJS)(GHL)

## MEMORANDUM OF LAW

       ANDREW M. CUOMO
       Attorney General of the State of New York
       Attorney for Defendants

Patrick F. MacRae
Assistant Attorney General, of Counsel
Bar Roll No. 102091
Telephone: 315-448-4822
Fax: 315-448-4851 (Not for service of papers)      Date: March 27, 2007

Dockets.Justia.com

**Table of Contents**

POINT I . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1
    PLAINTIFFS HAVE FAILED TO SUFFICIENTLY DEMONSTRATE
        THAT INJUNCTIVE RELIEF IS WARRANTED . . . . . . . . . . . . . . . . . . . . . . . 1

POINT II . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11
    DEFENDANTS ARE NOT PARTIES IN INTEREST . . . . . . . . . . . . . . . . . . . . . . . . 11

POINT III . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15
    PLAINTIFF PUBLIC CITIZEN, INC.,
        LACKS CAPACITY TO SUE. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

POINT IV . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19
    PLAINTIFF PUBLIC CITIZEN IS
        NOT A REAL PARTY IN INTEREST . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

POINT V . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21
    THE COURT SHOULD ABSTAIN FROM EXERCISING
        JURISDICTION IN THIS MATTER . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

# TABLE OF AUTHORITIES

## FEDERAL CASES

*Arizonans for Official English v. Arizona*, 520 U.S. 43 . . . . . . . . . . . . . . . . . . . . . . . . .  21

*Banzhaf v. FCC*, 132 US App. BC 14 (1968), cert denied 369 US 842 . . . . . . . . . . . . .  6

*Bar v. Went For It, Inc.*, 515 U.S. 618 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  11

*Bates v. State Bar of Arizona*, 433 U.S. 350 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  4, 5

*Bauer v. Veneman*, 352 Fed. 2nd 625, 632 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  21

*Brewer v. West Irondequoit CentralSchool District*, 212 F.3d 738 . . . . . . . . . . . . . . . .  2

*Bronx Household of Faith v. Board of Education of the City of New York*,
   331 F.3d 342 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  2

*Brooks v. Giuliani*, 84 F.3d 1454 (2nd Cir., 1996), cert. den . . . . . . . . . . . . . . . . . . . .  1

*Burfurd v. Sunoil Company*, 319 U.S. 315 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  24

*Capitol Broadcasting Company v. Acting Attorney General*, 405 U.S. 1000 . . . . . . . .  5

*Capitol Broadcasting Company v. Mitchell*, 333 Fed. Sup 582, (DC, 1971),
   affirmed, sub . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  5

*Central Hudson Gas and Electric Corp. v. Public Service Commission of
   New York*, 447 U.S. 557 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  6, 7

*Choi v. Kim*, 50 F.3d 244 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  17

*Colorado River Water Conservation District vs. United States*, 424 U.S.
   800 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  25

*Diversified Mortgage Investors v. U.S. Life Insurance Co.*, 544 F.2d 571 . . . . . . . . . .  1

*Eng. v. Smith*, 849 F.2d 80 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  2

*Haley v. Pataki*, 883 F.Supp. 816 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  1

*Hsu By and Through Hsu v. Roslyn Union Free School District, No. 3*, 85
   F.3d 839 (2nd Cir., 1996), cert. den . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  1

*Jackson Dairy, Inc. v. H.P. Hood & Sons, Inc.*, 596 F.2d 70 . . . . . . . . . . . . . . . . . . . .  1

*Jolly v. Coughlin*, 76 F.3d 468 (2d Cir. 1996) , cert. denied, 525 U.S. 824
    (1998), citing *Able v. United States*, 44 F.3d 128, 131 (2d Cir. 1995) . . . . . . . . . . . 2

*Lujan v. Defenders of Wildlife*, 504 U.S. 555 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

*O'Shea v. Littleton*, 414 U.S. 488 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

*Ohralik v. Ohio State Bar Association*, 436 U.S. 447 . . . . . . . . . . . . . . . . . . . . . . . . 4, 5

*Plaza Health Laboratoriess, Inc. v. Perales*, 878 F.2d 577 . . . . . . . . . . . . . . . . . . . . . . 2

*Reuters Ltd. v. United Press International, Inc.*, 903 F.2d 904 . . . . . . . . . . . . . . . . . . . 1

*State of New York v. Nuclear Regulatory Commission*, 550 F.2d 745 . . . . . . . . . . . . . 1

*Tom Doherty Associates, Inc. v. Saban Entertainment, Inc.*, 60 F.3d 27 . . . . . . . . . 1, 2

*Virginia Pharmacy Board v. Virginia Consumer Counsel*, 425 U.S. 748 . . . . . . . . . . . 4

*Woods v. Interstate Realty Co.*, 337 U.S. 535 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

## STATE CASES

*Continental Shows, Inc. v. Essex County Agricultural Society, Inc.*, 62
    A.D.2d 1103 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

*Matter of Greene*, 54 N.Y.2d 118 (1981), cert denied 455 US 1035 . . . . . . . . . . . . . 24

*Matter of Koffler*, 51 N.Y.2d 140 (1980), cert denied 450 US 1026 . . . . . . . . . . . . . . 24

*Matter of Shapiro*, 225 A.D.2d 215 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

*Matter of vonWiegen*, 63 N.Y.2d 163 (1984), cert denied 472 US 1007 . . . . . . . . . . 24

*Matter of Zimmerman*, 79 A.D.2d 263 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

## FEDERAL STATUTES

FRCP 17      . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

## STATE REGULATIONS

22 NYCRR §1200.6 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

22 NYCRR §1200.6(g) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

22 NYCRR §1200.8 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

22 NYCRR §1200.41-a . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  3

22 NYCRR §§1200.8 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  11

*22 NYCRR § 603.4(a)* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  13

*22 NYCRR § 603.9* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  13

*22 NYCRR § 605.5(a)(1)-(* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  13

*22 NYCRR § 605.6* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  13

*22 NYCRR § 605.6* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  13

22 NYCRR §605.6(f) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  13

*22 NYCRR § 605.7* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  14

*22 NYCRR § 605.8* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  14

*22 NYCRR § 605.13* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  14

*22 NYCRR § 605.13-a* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  14

*22 NYCRR §605.15* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  14

*22 NYCRR § 691.4* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  14

*22 NYCRR § 691.4* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  14

*22 NYCRR § 691.4* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  14

*22 NYCRR § 806.4* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  15

*22 NYCRR § 806.4(c)* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  15

*22 NYCRR § 806.5* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  15

*22 NYCRR §1029.19(a)* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  15

*22 NYCRR §1022.19(d)* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  16

*22 NYCRR § 1922.20* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  16

22 NYCRR § 1200.1 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  21

22 NYCRR §1200.6 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  21

22 NYCRR § 1200.7 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  22

22 NYCRR § 1200.41-a . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  23

*22 NYCRR Part 1200* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  12

*22 NYCRR Part 603(Sup. Ct., Appellate Division, 1st Dept.), 22 NYCRR*
*Part 691(Sup. Ct., Appellate Division, 2nd Dept.), 22*
*NYCRR Part 806* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  12

*22 NYCRR Part 1021* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  12

**POINT I**

**PLAINTIFFS HAVE FAILED TO SUFFICIENTLY DEMONSTRATE
THAT INJUNCTIVE RELIEF IS WARRANTED**

"[A] preliminary injunction is an extraordinary remedy that should not be granted except upon a clear showing that there is a likelihood of success and irreparable injury." *Diversified Mortgage Investors v. U.S. Life Insurance Co.,* 544 F. 2nd 571, 576.  A party seeking preliminary injunctive relief must usually show (a) that it will suffer irreparable harm in the absence of an injunction; and (b) either (i) likelihood of success on the merits or (ii) sufficiently serious questions going to the merits to make them a fair ground for litigation; and (c) a balance of hardships tipping decidedly in the movant's favor.  *Hsu By and Through Hsu v. Roslyn Union Free School Dist., No. 3,* 85 F. 3rd 839, 853 (2nd Cir., 1996), cert. den. 117 S. Ct. 608 (1996); *Brooks v. Giuliani,* 84 F. 3rd 1454, 1462 (2nd Cir., 1996), cert. den. 117 S. Ct. 480 (1996), citing *Jackson Dairy, Inc. v. H.P. Hood & Sons, Inc.,* 596 F. 2nd 70, 72 (2nd Cir., 1979); *Tom Doherty Assocs., Inc. v. Saban Entertainment, Inc.,* 60 F. 3rd 27, 33 (2nd Cir., 1995).

Irreparable harm "is the most significant requirement for issuance of a preliminary injunction...To make a proper showing of facts proving that the harm is imminent and not remote or speculative." *Haley v. Pataki,* 883 F. Supp. 816, 823 (N.D.N.Y., 1995), citing *Reuters Ltd. v. United Press Int'l, Inc.,* 903 F. 2nd 904, 907 (2nd Cir., 1990), appeal dism'd and order vacated, 60 F. 3rd 137 (2nd Cir., 1995).  See also *State of New York v. Nuclear Regulatory Commission*, 550 F. 2nd 745, 755 (2nd Cir., 1977).

Where a moving party challenges "government action taken in the public interest pursuant to a statutory or regulatory scheme," the plaintiff must demonstrate both irreparable harm and a likelihood of success on the merits, rather than the less onerous "fair ground for litigation" of serious issues standard.  *Bronx Household of Faith v. Board of Education of the City of New York*, 331 F.3d 342, 349 (2d Cir. 2003); *Jolly v. Coughlin*, 76 F.3d 468, 473 (2d Cir.

1996) , cert. denied, 525 U.S. 824 (1998), citing *Able v. United States*, 44 F.3d 128, 131 (2d

Cir. 1995) (per curiam) (in turn quoting *Plaza Health Labs., Inc. v. Perales*, 878 F.2d 577, 580

(2d Cir. 1989)).   An even stricter standard must be used where the plaintiff seeks affirmative

type relief, otherwise known as a mandatory injunction, or where the injunction sought "'will

provide the plaintiff with substantially all the relief sought, and that relief cannot be undone even

if the defendant prevails at a trial on the merits.'"   *Jolly*, 76 F.3d at 473, quoting *Tom Doherty*, 60

F.3d at 33-34.  In these cases, the plaintiff must make a "clear" or "substantial" showing of a

likelihood of success.  See also *Bronx Household of Faith*, 331 F.3d at 349; *Brewer v. West

Irondequoit Cent.School Dist.*, 212 F.3d 738, 744 (2d Cir. 2000); *Eng. v. Smith*, 849 F.2d 80, 82

(2d Cir. 1988).

Plaintiff's have moved for a preliminary injunction with respect to various provisions of

the Disciplinary Rules of the Code of Professional Responsibility at 22 NY CRR Part 1200,

which became effective in New York State on February 1, 2007.

In substance, Plaintiff's motion for a preliminary injunction seeks to enjoin the State

from enforcing rules of attorney conduct which prevent attorneys from using advertisements that

(1) include an endorsement of, or testimonial about, a lawyer or law firm from a client with

respect to a matter still pending . . . (3) include the portrayal of a judge . . . (5) rely on techniques

to obtain attention that demonstrate a clear and intentional lack of relevance to the selection of

counsel, including the portrayal of lawyers exhibiting characteristics clearly unrelated to legal

competence . . . [and] (7) utilize a nickname, monitor, moto or trade name that implies an ability

to obtain results in a matter, (portions of 22 NYCRR §1200.6(c)); which preclude attorneys from

using "a pop-up or pop-under advertisement in connection with computer accessed

communications, other than on the lawyer or law firms own website or other intranet presents,"

(22 NYCRR §1200.6(g)(1)); which establishes that "no solicitation relating to a specific incident

involving potential claims for personal injury or wrongful death shall be disseminated before the

thirtieth (30th) day before the date of the incident, unless a filing must be made within thirty (30) days of the incident as a legal prerequisite to the particular claim, in which case no unsolicited communication shall be made before the fifteenth (15th) day after the date of the incident," (22 NYCRR §1200.8(g)); and "(a) in the event of an incident involving potential claims for personal injury or wrongful death, no unsolicited communication shall be made to an individual injured in the incident or to a family member or legal representative of such individual, by a lawyer or law firm or by any associate, agent, employee or other representative of a lawyer or a law firm, seeking to represent the injured individual or legal representative thereof in potential litigation or in a proceeding arising out of the incident before the thirtieth (30th) day after the date of the incident, unless a filing must be made within thirty (30) days of the incident as a legal prerequisite to the particular claim, in which case no unsolicited communication shall be made before the fifteenth (15th) day after the day of the incident. (b) this provision limiting contact with an injured individual or the legal representative thereof applies as well to lawyers or law firms or any associate, agent, employee or other representative of a lawyer or law firm who represent actual or potential defendants or entities that may defend and/or indemnify said defendants."  22 NYCRR §1200.41-a.

In 1977, the US Supreme Court held that lawyer advertising is a form of commercial speech protected under the First Amendment.  *Bates v. State Bar of Arizona*, 433 US 350.  The *Bates* decision dealt with a complete ban on advertising, which the Court found to be excessive. However, the *Bates* courts specifically did "not hold that advertising by attorneys may not be regulated in any way." id at 383.  In citing *Virginia Pharmacy Board v. Virginia Consumer Counsel*, 425 US 748, 771-772 (1976), the court stated that " advertising that is false, deceptive, or misleading of course is subject to restraint."  *Bates*, 433 US at 383.  "In fact," the Court continued "because the public lacks sophistication concerning legal services, misstatements that might be overlooked or deemed unimportant in other advertising may be found quite

inappropriate in legal advertising. . . for example, advertising claims as to the quality of services - a matter we do not address today - are not susceptible of measurement or verification; accordingly, such claims may be so likely to be misleading as to warrant restriction. Similar objections might justify restraints on in-person solicitation. We do not foreclose the possibility that some limited supplementation, by way of warning or disclaimer or the like, might be required of even an advertisement of the kind ruled upon today so as to assure that the consumer is not mislead. In sum, we recognize that many of the problems in defining the boundary between deceptive and non-deceptive advertising remain to be resolved, and we expect that the Bar will have a special role to play in assuring that advertising by attorneys flows both freely and cleanly." *id* at 383.

The following year after *Bates*, the Supreme Court again addressed the issue of attorney advertising in *Ohralik v. Ohio State Bar Association*, 436 US 447 (1978). The court noted that "in addition to its general interest in protecting consumers and regulating commercial transactions, the State bears a special responsibility for maintaining standards among members of the licensed professions. *See Williamson v. Lee Optical Company*, 348 US 483 (1955); *Semler v. Oregon State Board of Dental Examiners*, 294 US 608 (1935). 'the interest of the states in regulating lawyers is especially great since lawyers are essential to the primary governmental function of administering justice, and have historically been officers of the courts.' *Goldfarb v. Virginia State Bar*, 421 US 773, 792 (1975). While lawyers act in part as 'self-employed business men,' they also act 'as trusted agents of their clients, and as assistants to the court in search of a just solution to disputes.' *Cohen v. Hurley*, 366 US 117, 124 (1961)." id at 460. While *Ohralik* dealt with the issue of undue influence exerted by an attorney in an in-person solicitation, the *Bates* Court acknowledged, but did not directly address "the special problems of advertising on the electronic broadcast media," which it said "will warrant special consideration." *Bates v. Arizona*, 433 US at 384. Although acknowledging these special state

4

interests in regulating attorney advertising and noting the existence of special problems associated with electronic broadcast media, the court's decision in *Ohralik* ultimately relied on the conclusion that advertising in the form of in-person solicitation "may exert pressure and often demands an immediate response without providing an opportunity for comparison or reflection . . [where] the aim and effect of in-person solicitation may be to provide a one sided presentation and to encourage speedy and perhaps uninformed decision making; there is no opportunity for intervention or counter-education by agencies of the Bar, supervisory authorities or persons close to the solicited individual. *Ohralik v. Ohio*, 436 US at 457.

Irrespective of the nature of solicitation involved in *Ohralik*, it is worthwhile to note that the Supreme Court, in voicing its concern about the special problems associated with broadcast media, made reference to *Capitol Broadcasting Company v. Mitchell*, 333 Fed. Sup 582, (DC, 1971), affirmed, sub nom *Capitol Broadcasting Company v. Acting Attorney General*, 405 US 1000 (1972). *Capitol Broadcasting* dealt with restrictions placed on broadcast advertising of cigarette commercials. The District Court noted that "substantial evidence showed that the most persuasive advertising was being conducted on radio and television" and citing *Banzhaf v. FCC*, 132 US App. BC 14 (1968), cert denied 369 US 842 (1969), noted that "the fact is that there is significant differences between the electronic media and print . . . 'written messages are not communicated unless they are read, and reading requires an affirmative act. Broadcast messages, in contrast, are in the air. In an age of omnipresent radio, there scarcely breaths a citizen who does not know some part of a leading cigarette jingle by heart . . . it is difficult to calculate the subliminal impact of this pervasive propaganda, which may be heard even if not listened to, but it may reasonably be thought greater than the impact of the written word." *Capitol Broadcasting v. Mitchell*, 333 Fed Sup. at 585 - 586.

Taken together, these cases signify the Supreme Court's approval of restrictions on attorney advertising, specifically when it is false or misleading, presumptively where advertising

is conducted under particularly sensitive and unduly influential circumstances, and where the advertising impairs the integrity of the administration of justice.

In *Central Hudson Gas and Electric Corp. v. Public Service Commission of New York*, 447 US 557 (1980), the US Supreme Court fashioned a four prong test for evaluation of limitations on commercial free speech. First, the Court stated that "there can be no constitutional objection to the suppression of commercial messages that do no accurately inform the public about lawful activity. The government may ban forms of communication more likely to deceive the public than to inform it." id at 563, citations omitted. The court went on to state that "if the communication is neither misleading nor related to unlawful activity, the governments power is more circumscribed. The State must assert a substantial interest to be achieved by restrictions on commercial speech. Moreover, the regulatory technique must be in proportion to that interest. The limitation on expression must be designed carefully to achieve the State's goal. Compliance with this requirement may be measured by two criteria. First, the restriction must directly advance the State interest involved; the regulation may not be sustained if it provides only ineffective or remote support for the government's purpose. Second, if the governmental interest could be served as well by a more limited restriction on commercial speech, the excessive restrictions cannot survive." id at 564.

Turning to the claims of Plaintiff James L. Alexander and Alexander & Catalano, LLC, the first of the Central Hudson Tests is easily met. Defendants suggest to the Court that the advertisements submitted by Plaintiff are not a complete catalog of their television advertisements. However, in just the few submitted there are patent falsities. Irrespective of whether Plaintiffs intend their commercials to be humorous, it cannot be denied that there is little likelihood that they were retained by aliens, have the ability to leap tall buildings in a single bound, or have stomped around downtown Syracuse, Godzilla-style. These absurdities, however, are not the most disturbing misrepresentations to be found in these advertisements.

In the alien advertisement, Plaintiffs suggest that damage to the alien's spacecraft should be paid for by an insurance company, to which the alien responds that the insurance company said "no way."  In response, suggesting that this space vehicle insurance company can be compelled to pay for damages (without any indication of legal liability), attorney Alexander responds by saying "then we'll get them to say 'yes, way'" followed by attorney Catalano saying "because we're the heavy hitters."

Without support of any kind, Plaintiffs claim that use of the term "heavy hitters" only suggests their knowledge of the field in which they practice.  However, a "heavy hitter" is defined as either "a baseball player who makes many extra base hits [or] a very important or influential person."  *Webster's Encyclopedic Under Bridged Dictionary of the English Language, 1996.*  Rather than suggesting knowledge, Defendants submit that the use of the term in conjunction with a suggestion that they are able to compel an insurance company to make a payment, without even the slightest suggestion that any such payment would require some legal basis, serves more to mislead the uninformed public to believe the "heavy hitters" can bring to bear certain powers or influence that have no relationship to their knowledge or the facts of the case at hand.  The falsity of the advertisements, alone, are sufficient to warrant restriction.

Even if the Court were to look at the advertisements as having survived the first of the *Central Hudson* test, the State would nonetheless have a substantial interest in restricting advertising that violates the challenged rules.  The Preamble to the Code of Professional Responsibility adopted by the State of New York sets forth the clear and lofty State interest involved in the practice of law.  There, preamble state: "the continued existence of a free and democratic society depends upon recognition of the concept that justice is based upon the rule of law grounded in respect for the dignity of the individual and his capacity through reason for enlightened self-government.  Law so grounded makes justice possible, for only through such law does the dignity of the individual retain respect and protection.  Without it, individual rights

become subject to unrestrained power, respect for law is destroyed, and rational self-government is impossible.  Lawyers, as guardians of the law, play a vital role in the preservation of society.  The fulfillment of this role requires an understanding by lawyers of their relations with and function in our legal system.  A consequent obligation of lawyers is to maintain the highest standards of ethical conduct."  *New York Judiciary Law, Appendix, Preamble to Code of Professional Responsibility.*  This statement of State interest, together with the interests already recognized by the Supreme Court, as noted above, clearly establish that the State has a basis for enacting the restrictions on attorney advertising set forth in the challenged rules.

In support of its State interest, the code of professional responsibilities sets forth, at least as pertinent to the challenged rules, two particularly pertinent Canons.  The first is that "a lawyer should assist the legal profession in fulfilling its duty to make legal counsel available."  *Judiciary Law Appendix, Code of Professional Responsibility, Canon two.*  The ethical considerations, stated in the Preliminary Statement of the Code of Professional Responsibility, "are aspirational in character and represent the objective toward which every member of the profession should strive.  They constitute a body of principles upon which the lawyer can rely for guidance in many specific situations." These ethical considerations are particularly pertinent in this matter.  For example, ethical consideration 2-9 states that "the attorney-client relationship is personal and unique and should not be established as a result of pressures and deceptions."

Ethical Consideration 2-10 states that "a lawyer should ensure that the information contained in any advertising which the lawyer publishes, broadcasts, or causes to be published or broadcast is relevant, is disseminated in an objective and understandable fashion, and would facilitate the prospective client's ability to select a lawyer.  A lawyer should strive to communicate such information without undue emphasis upon style and advertising stratagems which serve to hinder rather than to facility intelligent selection of counsel.  Although communications involving puffery and claims that cannot be measured or verified are not

specifically referred to in DR 2-101, such communications would be prohibited to the extent that they are false, deceptive or misleading.  In disclosing information, by advertisements or otherwise, relating to a lawyer's education, experience or professional qualifications, special care should be taken to avoid the use of any statement or claim which is false, fraudulent, misleading, deceptive or unfair, or which is violative of any statute or rule of court."

Ethical Consideration 2-14 states "the following, if used in public communications or communications to a perspective client, are likely to be false, deceptive or misleading: (1) a communication that promises the outcome of any legal matter; (2) a communication that states or implies that the lawyer has the ability to influence improperly a court, court officer, government agency or government official; (3) a letter or other written communication made to appear as a legal document; (4) the inclusion of names, addresses and telephone numbers as required by DR 2-101(k) in a manner that is to small or to fast for an average viewer to receive the information in a meaningful fashion; (5) the use of dollar signs, the terms "most cash" or "maximum dollars" or like terms that suggest the outcome of the legal matter; (6) the use of an actor to portray the lawyer or another representative of the lawyer's firm; or (7) any other use of an actor or use of a dramatization without meaningful disclosure thereof."

In each instance, the challenged regulations directly advance the State interest involved by providing for measures that will protect the unsuspecting public from misleading and deceptive advertising.  The government's interest is not over broad because the limitations primarily present those areas of advertising abuse that are most likely to have an influence on the selection of counsel in ways that have no bearing on the relative competence of counsel to protect the legal right at issue or the cost of those services.

Although Plaintiff charges that the challenged rules were adopted out of a distaste for the unsavory nature of the advertising these rules would prohibit, such a suggestion is entirely unfounded.  Although, as the Supreme Court has amply and repeatedly stated, the State has an

interest in regulating speech for the protection of the integrity of its licensed professionals, the disciplinary rules challenged by the Plaintiffs were established under the guidance of canons and ethical considerations that looked solely at the protection of the recipients of legal services. While the net effect may be to serve the equally valid State interest of preserving the integrity of its professions, these regulations only do so as a byproduct of protecting the legal rights of the citizens of this State.

Deserving of separate consideration, because of their time-based restriction on solicitation are 22 NYCRR §§1200.8(g) and 1200.41(a). These restrictions, which include solicitation of potential clients and claims involving personal injury or wrongful death for a thirty (30) day period is utterly indistinguishable from a similar regulation upheld by the Supreme Court in Florida - *Bar v. Went For It, Inc*., 515 US 618 (1995). There, the court found that the state had substantial interest in protecting the privacy and tranquility of personal injury victims as well as in preventing erosion of confidence in the legal profession. Id at 624-625, 635.

It is worth noting that the Court stated, with respect to the forth of the Central Hudson Standards, that the "least restrictive means" test does not apply in the commercial context. Id at 632. Rather, the issue is whether there is a "fit" between the states ends and the means chosen to accomplish those ends; the fit need not be "perfect," but only "reasonable" and in proportion to the interest served, and thus narrowly tailored to achieve the desired objective. Id at 632.

Based on the foregoing, Defendants respectfully submit that not only have Plaintiff's Alexander and Alexander and Catalano failed to demonstrate a likelihood of success on the merits, the causes of action set forth in the complaint directly contradict the holdings of the Supreme Court and, therefore, the causes of action by Alexander and Alexander and Catalano should be dismissed in their entirety.

## POINT II

## DEFENDANTS ARE NOT PARTIES IN INTEREST

Plaintiff's complaint names as defendants the various chief counsel and acting chief counsel to the New York State Disciplinary Committees for the four judicial districts in New York State. It appears that plaintiff's named these defendants through the mistaken assumption that "collectively, the chief counsels of the committees are responsible for enforcing New York's disciplinary rules throughout the state." *Document 1, ¶17.* Actually, "the Appellate Division of the Supreme Court in each Department is authorized to censure, suspend from practice or remove from office any attorney and counselor at law admitted to practice who is guilty of professional misconduct, malpractice, fraud, deceit, crime or misdemeanor, or any conduct prejudicial to the administration of justice." *Judiciary Law § 90(2).* Under authority of this statute, the Presiding Justices of the four Appellate Divisions promulgated, and from time to time have amended, the disciplinary rules of the Code of Professional Responsibility applicable to attorneys practicing law within the State of New York. *22 NYCRR Part 1200, see also, Appendix, NY Judiciary Law*.

Each of the four Appellate Divisions of the New York State Supreme Court have adopted rules governing the conduct of attorneys practicing within those departments, which include rules pertaining to the application of discipline of those attorneys. *22 NYCRR Part 603(Sup. Ct., Appellate Division, 1st Dept.), 22 NYCRR Part 691(Sup. Ct., Appellate Division, 2nd Dept.), 22 NYCRR Part 806 (Sup. Ct., Appellate Division 3rd Dept.), and 22 NYCRR Part 1021 ( Sup.Ct., Appellate Division, 4th Dept).* The rules of the various departments describe the role of the chief attorney and defines who has authority to discipline attorneys.

Under rules established by the Supreme Court, Appellate Division, 1st Dept., a Disciplinary Committee for the Judicial Department has been established and "charged with the duty and empowered to *investigate* and *prosecute* matters involving alleged misconduct by

11

attorneys....and *impose discipline to the extent permitted by Section 603.9 of this part.*" *22 NYCRR § 603.4(a)(1), emphasis added*.  The power to discipline granted by this rule allows the departmental disciplinary committee to "issue an admonition or a reprimand in those cases in which professional misconduct, not warranting proceedings before this court, is found.  An admonition is discipline imposed without a hearing.  A reprimand is discipline imposed after a hearing." *22 NYCRR § 603.9*.  Reprimand and admonition are not the only forms of discipline available, however.  Professional misconduct is also grounds for disbarment, suspension, and censure, all of which must be meted out by the court. *22 NYCRR § 605.5(a)(1)-(5)*.

The rules of the first department do not vest the office of chief counsel with any authority to discipline an attorney practicing law within that department.  Rather, the office of chief counsel is empowered to "undertake and complete an investigation of all matters involving misconduct of attorneys." *22 NYCRR § 605.6(a)*.  "Following completion of any investigation....the office of chief counsel shall recommend one of the following dispositions: (1) referral to another body on account of lack of territorial jurisdiction; (2) dismissal for any reason....and referral to another body if appropriate; (3) admonition; or (4) formal proceedings before a hearing panel." *22 NYCRR § 605.6(e)*.  Except in cases of referral to another body (which the office of chief counsel is empowered to undertake pursuant to 22 NYCRR § 605.6(f)(1), recommendations made by the office of chief counsel are reviewed by a reviewing member of the department disciplinary committee, who is empowered to either approve or modify the recommendation made by the office of chief counsel. *22 NYCRR § 605.7(a), (b)*. Where a matter is disposed of without formal proceedings, the office of chief counsel is authorized to notify the respondent attorney in instances where the complaint has been dismissed.  However, where an admonition is issued, this is done by the committee chair person. *22 NYCRR § 605.8(a)*.  Where the committee has determined that formal proceedings are called for, the office of chief prosecutes the matter first before a referee (*22 NYCRR § 605.13*), then

before a hearing panel (*22 NYCRR § 605.13-a*), and finally before the appellate division (*22 NYCRR § 605.15*).

The Supreme Court, Appellate Division, 2nd Department has established three grievance committees (one covering the second and eleventh judicial districts, another covering the ninth judicial district, and the third covering the tenth judicial district). *22 NYCRR § 691.4(a)*. Upon receipt of a specific complaint, the grievance committees of the 2nd Department may commence an investigation into the allegations of professional misconduct. *22 NYCRR § 691.4(c)*. Upon completion of a preliminary investigation, a majority of the grievance committee may either dismiss the complaint; complete the matter by issuing a letter of caution; conclude the matter by privately admonishing the attorney; hold a hearing on written charges, after which the committee may either dismiss the charge or charges, or sustain more charges and issue a letter of caution or admonition or recommend that probable cause exists for filing disciplinary charges with the court; or forthwith recommend to the court that disciplinary proceedings be initiated. *22 NYCRR § 691.4(e), (f), (h)*.

Under rules of the Supreme Court, Appellate Division, 3rd Department, a committee on professional standards has been established which has the duty, in pertinent part, to "consider and cause to be investigated all matters called to its attention....[and] supervise the professional staff in the performance of its duties to the committee. *22 NYCRR § 806.3(a), (b)*. The chief attorney, as a member of the professional standards committee's professional staff, is directed to "answer and take appropriate action respecting all inquiries concerning an attorney's conduct and....investigate all matters involving alleged misconduct by an attorney in the 3rd Judicial Department." *22 NYCRR § 806.3(e)*.

It is the role of the chief attorney, prior to initiating an investigation of this specific complaint, to first "determine whether the allegations, if true, are sufficient to establish a charge of professional misconduct....upon conclusion of an investigation, the chief attorney shall make a

report to the committee." *22 NYCRR § 806.4*.  Upon receipt of the investigation, "if....the

committee determines that no action is warranted the complaint shall be dismissed....if the

committee determines that a complaint warrants action, it may: (i) direct that a disciplinary

proceeding be commenced against the attorney; or (ii) admonish the attorney....or (iii) issue a

letter of caution....or (iv) issue a letter of education." *22 NYCRR § 806.4(c)(1)*.  Additionally,

"upon determining that a disciplinary proceeding should be instituted, the committee shall file

with the court the....notice of petition and petition of charges." *22 NYCRR § 806.5*.

Under rules established by the Supreme Court, Appellate Division, 4th Department, each

judicial district in the department has an attorney grievance committee.  *22 NYCRR §*

*1029.19(a)(1)*.

Along with the duties of the attorney grievance committee are the responsibilities to "consider

and investigate all matters presented or referred to it....[and] supervise staff attorneys in the

performance of their duties before the committee.  *22 NYCRR § 1022.19(b)*.  The attorney

grievance committee's legal staff includes "a chief attorney and such staff attorney positions as

may be provided for in the State budget."  *22 NYCRR § 1022.19(c)(1)*.  It is the duty of the chief

attorney to initiate investigation of complaints.  The only action on a complaint specifically

authorized to the legal staff is the ability to refer to an appropriate committee of the local bar

association matter deemed to be of a minor nature (e.g., personality conflict, fee dispute, or a

delay that resulted in no harm to the client). *22 NYCRR § 1022.19(d)(1)(v)*.

In matter where the investigation suggests that formal disciplinary proceedings are not

warranted, the chief attorney is required to consult with the attorney grievance committee

chairperson; after which the chief attorney or designated staff attorney may dismiss the

complaint, refer the complaint to mediation or monitoring, recommend to the Appellate Division

that the matter under investigation be stayed and the attorney diverted to a monitoring program,

issue a letter of caution to the subject attorney, or recommend to the attorney grievance

committee that a letter of admonition be issued to the subject attorney. *22 NYCRR §*

*1022.19(d)(2).*

With respect to formal disciplinary proceedings, the authority of the chief attorney is

committed to recommending to the attorney grievance committee that disciplinary proceedings

be commenced. It then falls to a majority vote of the committee members to approve the chief

attorney's recommendation, after which the chief attorney is authorized to institute those

proceedings in the Appellate Division. *22 NYCRR § 1922.20(a).*

Defendants roles as counsel to the various disciplinary committees, with no independent

authority to discipline attorneys for conduct that violates the Code of Professional

Responsibility, renders them parties with no interest in the issues presented in the Complaint.

Even if plaintiffs were successful in their motion seeking a preliminary injunction preventing

these defendants from enforcing the challenged rules, it would not affect the duty and authority

of the respective committees and departments from proceeding according to the dictates of

statute. In this manner, the defendants stand in an equivalent position to a plaintiff attorney who

commences an action in his or her own name, but on behalf of a client. In such a situation, the

action is subject to dismissal because the attorney, just as the defendants here, has no real

interest in the effect of the litigation. *Choi v. Kim,* 50 F. 3d 244, 247 (3d Cir., 1995).

## POINT III

### PLAINTIFF PUBLIC CITIZEN, INC., LACKS CAPACITY TO SUE.

The complaint alleges that "plaintiff Public Citizen, Inc. is a non-profit public interest

organization with approximately 100,000 members nationwide, including more than 9,450 in

New York....Public Citizen has an interest in protecting its New York members, who will be

deprived of information about their legal rights and available legal services under the

amendments. *Complaint,¶ 5.* The complaint also alleges that "Public Citizen Litigation Group

(PCLG) is a division of Public Citizen that conducts litigation in state and federal courts.  Of PCLG's eight staff lawyers, two are licensed to practice law in New York.  PCLG has solicited clients in New York for representation on a *pro bono* basis and has represented clients before state and federal courts in New York.  PCLG distributes a variety of educational materials to the public.  It also operates websites at http://www.citizen.org/litigation/ and http://www.cyberSLAPP.org/, and co-sponsors the consumer law and policy blog at http://www.CLPBLOG.org/, all of which are accessible from New York." *Complaint* ¶ 5.

The Public Citizen website (www.Citizen.org) identifies itself as "a national, non-profit consumer advocacy organization founded in 1971 to represent consumer interests in Congress, the executive branch and the courts...[with] six divisions and one state office."  The six divisions of Public Citizen are Safety, Congress Watch, Energy Program, Global Trade Watch,  Health Research Group and the Ligation Group.  The organization's single state office is located in Texas. *Exhibit 1.*

The website www.cyberSLAPP.org identified in the complaint, is a website "sponsored by a coalition of civil liberties and private groups" that includes Public Citizen. *Exhibit 2.*

The final site identified in the complaint (www.CLPBLOG.org) is a web blog "hosted by Public Citizen's Consumer Justice Project" with contributors to which "are a diverse group of lawyers and law professors who practice, teach, or write about consumer law and policy." *Exhibit 3.*

Public Citizen's allegation that its interest and the subject of this matter relates, in significant part, to the fact that its websites are accessible from New York and that its New York members may be deprived of information regarding legal services.  Defendants respectfully submit to the court that the suggestion that the mere existence of a website is insufficient to establish a connection to a particular jurisdiction.  Defendants ask the court to take judicial notice of the fact that internet searches routinely turn up websites that have no connection to the

jurisdiction in which the person searching the internet resides or has a presence.

Defendants also submit that membership in Public Citizen should not be considered as a basis for determining a jurisdictional presence.  The Public Citizen website identifies three available membership levels.  The first level, a Friend of Public Citizen, identified by the Public Citizen website as "a group of Public Citizen's most dedicated members who pledge a monthly gift.  All contributions to the Friends of Public Citizen program are allocated to Public Citizen Foundation and are tax deductible in excess of your $20.00 Public Citizen membership....as a Friend you will get all of the great benefits of membership including: bimonthly newsletter, Public Citizen's News; monthly guide Health Letter; regular updates on our progress; plus the satisfaction of knowing that you're an important part of Public Citizen's fight again at the special interests that are working for control of our government." *Exhibit 4.*

The second level of membership, as Public Citizen member, provides, "with a contribution of $20.00 or more: one year of Public Citizen news to keep up to date on our efforts on our behalf; 20% discount off most Public Citizen books, reports and briefings; email updates on Public Citizen issues; [and] with a contribution of $35.00 or more: you'll get all the great benefits mentioned above; plus you'll receive the Health Letter, to keep you informed about important medical issues." *Exhibit 5.*

The third membership level is as a Public Citizen Partner. "Giving at the Partner level means you are making a significant difference in the work Public Citizen is doing to eradicate the influence of well financed special interests.  When you donate at least $500.00 per year you will receive: six (6) issues of Public Citizen News to keep you up to date on our efforts on your behalf; updates via email and U.S. mail throughout the year on Public Citizen issues; twelve (12) issues of Health Letter, to keep you informed about important medical updates; plus you'll receive several Public Citizen financial newsletters a year to help with information on tax and estate planning." *Exhibit 6.*

As stated in Public Citizen's own definition of member benefits, it is evident that

membership in Public Citizen does not provide any business control or influence by the member.

Rather, membership is merely equivalent to the payment for subscription services.  As such, the

residence of these members in New York state is irrelevant to the issue whether Public Citizen

has a business presence in New York.

Your undersigned conducted a search of the New York State Department of State

Division of Corporation's data base to ascertain whether Public Citizen is a corporation licensed

to do business in New York.  The data base was reported to be current through March 20, 2007.

Public Citizen did not appear on the data base.  Upon information and belief, Public Citizen,

therefore, is a corporation foreign to New York.  However, to the extent that, pursuant to the

terms of membership identified by Public Citizen, and its allegation of having more than 9,000

members in New York state, it regularly conducts an does business in New York by sending

materials to its members.  *Continental Shows, Inc. v. Essex County Agricultural Society, Inc.*, 62

AD2nd 1103 (3rd Dept., 1978).

New York Business Corporation Law § 1312(a) states that "a foreign corporation doing

business in this state without authority shall not maintain any action or special proceeding in this

state unless and until such corporation has been authorized to do business in this state and has

paid to the state all fees and taxes imposed under the tax law or any other related statute....as well

as penalties and interest charges related thereto, accrued against the corporation."

Insofar as plaintiff Public Citizen is a foreign corporation, seeking to bring action in New

York state, the complaint is fatally deficient to the extent that it does not specifically allege that

it has overcome the prohibition against commencement of an action in New York as set forth in

Business Corporation Law § 1312.  "Where...one is barred from recovery in State Court, he

should likewise be barred in Federal Court." *Woods v. Interstate Realty Co.*, 337 U.S. 535, 538

(1949).  Accordingly, plaintiff Public Citizen does not have capacity to maintain this action in

New York pursuant to FRCP 17(b).

## POINT IV

### PLAINTIFF PUBLIC CITIZEN IS
### NOT A REAL PARTY IN INTEREST

In order to have standing in this matter, Public Citizen, Inc. must have a legally protected interest. *Arizonans for Official English v. Arizona,* 520 U.S. 43, 64 (1997). As a part of this legally protected interest, the injury alleged by Public Citizen must affect it in a personal and individual way. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992). The injury must be real and immediate. It is not sufficient to be merely conjectural or hypothetical. *O'Shea v. Littleton*, 414 U.S. 488, 494 (1974); *Bauer v. Veneman*, 352 Fed. 2nd 625, 632 to 637 (2nd Circ., 2003).

In the present action, plaintiff Public Citizen, in challenging the constitutionality of the Attorney Disciplinary Rules pertaining to advertising (22 NYCRR § 1200.1), alleged that "the plain language of the definition covers solicitation of *potential* clients for *pro bono* representation by Public Citizen received by *potential* clients in New York." *Complaint, ¶ 33(a), emphasis added.*

In challenging 22 NYCRR §1200.6(d) and (e), plaintiff Public Citizen asserts that it "frequently makes statements about the quality of its services and past successes" and that "recipients of non-commercial speech and *pro bono* solicitations are *not likely* to be confused by these statements, and the State has no interest in regulating them as applied to non-commercial speech. *Complaint ¶ 34, emphasis added.* In challenging 22 NYCRR § 1200.6(f), plaintiff Public Citizen alleges that "the recipient of a *pro bono* solicitation by Public Citizen would likely ignore or discard material labeled 'attorney advertising.' Similarly, email labeled 'attorney advertising' in a subject line would likely be blocked by a spam filter or deleted by the recipient without being read." *Complaint, ¶ 35.* In challenging 22 NYCRR § 1200.6(f).

Plaintiff Public Citizen challenges 22 NYCRR § 1200.6(k), requiring the retention of advertisements "received by consumers in New York" based on the proposition that "complying with this rule would involve an unjustified expense and would burden plaintiff's ability to engage in non-commercial communication." *Complaint, ¶ 36.*

Each of the foregoing sets forth speculative proposals regarding the possible impact of the amendments on plaintiff Public Citizen.  None, however, set forth an injury that is either distinct and palpable or real and immediate. Rather, all of the potential for damage set forth in the complaint is merely hypothetical and, therefore, does not establish an injury in fact sufficient to create standing for plaintiff Public Citizen.

Public Citizen also challenges 22 NYCRR § 1200.7(e), which delineates the use of an internet website by a lawyer or law firm.

Although plaintiff challenges this regulation on the basis that for brevity is important in the choice of a domain name and because neither Public Citizen nor PCLG identified in the website addresses of www.citizen.org/litigation, www.cyberSLAP.org or www.CLPBlog.org it is notable that the websites www.citizen.org/ligation and www.cyberSLAP.org both clearly state on each of their web pages that it is "powered by Public Citizen." www.CLPBlog.org also states that it is sponsored by Public Citizen's Consumer Justice Project."  Not only does this clearly state that the site is sponsored by plaintiff Public Citizen, but it is also notable that, as an internet blog hosted by Public Citizen, its contributors, as is clearly identified on the website, "are a diverse group of lawyers and law professors who practice, teach or write about consumer law and policy."  Defendants submit that Public Citizen's use of these domain names serves no more to solicit clients or communicate with clients in New York State than it does to serve the same purpose to anyone having a computer and internet access anywhere.

Contrary to plaintiff Public Citizen's statement that the "the state has no legitimate interest in prohibiting the practice of law using domain names that 'imply an ability to obtain

results'," such a restriction is clearly within the state's interest in protecting its citizens from advertisement in the form of a domain name that is or may be false, deceptive, or misleading.

Public Citizen also challenges 22 NYCRR § 1200.41-a, imposing a 30-day waiting period in unsolicited communications involving potential claims for personal injury or wrongful death. This regulation, however, serves the state's significant interest in protecting its citizens from marketing on a sensitive issue during a particularly vulnerable period. Furthermore, the regulation does not prohibit solicited communication and would not prohibit Public Citizen from using a regulation-compliant website to advertise its availability to handle representation of matters related to the event. Defendants basis for this is further described in their opposition to plaintiffs motion for a preliminary injunction, above.

For all the foregoing reasons, defendants respectfully submit that the complaint fails to establish that plaintiff Public Citizen has standing in this matter and, therefore, should be dismissed from the action.

## POINT V

### THE COURT SHOULD ABSTAIN FROM EXERCISING
### JURISDICTION IN THIS MATTER

As set forth above, New York Judiciary Law §90 provided a vehicle for the New York State Supreme Court, Appellate Divisions to establish a comprehensive State Court system of administrative and judicial review which has "the power to give definite answers to the question of State Law posed." *Burford v. Sunoil Company*, 319 US 315, 325-327 (1943).

The administrative and judicial procedures in New York State are extensive and provide for both administrative and judicial review, with ultimate resolution available in the New York Court of Appeals. Constitutional challenges to the regulations is readily available in the judicial proceedings. See, e.g., *Matter of Koffler*, 51 NY2nd 140 (1980), cert denied 450 US 1026

(1981); *Matter of Greene*, 54 NY2nd 118 (1981), cert denied 455 US 1035 (1982); *Matter of vonWiegen*, 63 NY2nd 163 (1984), cert denied 472 US 1007 (1985); *Matter of Zimmerman*, 79 AD2nd 263 (4th Dept., 1981), leave dismissed 53 NY2nd 606 (1981); and *Matter of Shapiro* 225 AD2nd 215 (4th Dept., 1996).

Insofar as the regulations being challenged only went into effect on February 1, 2007, the State has not had an opportunity to address questions of the constitutionality of those regulations. As such, the constitutionality of these regulations is unclear, but by supplanting federal review before the State has had an opportunity to access its own regulations, would be "disruptive of state efforts to establish a coherent policy". *Colorado River Water Conservation District vs. United States*, 424 US 800, 814 (1976).

Accordingly, defendants respectively submit that this Court would be warranted in exercising it judicial discretion to abstain from entertaining this matter.

## CONCLUSION

On the basis of the forgoing, defendants respectfully submit to this Court that plaintiffs' have failed to establish a basis upon which a preliminary injunction should be granted in this matter. Furthermore, defendants submit that plaintiffs' Alexander and Alexander and Catalano have failed to state causes of action for which relief may be granted and, therefore, all causes of action stated by them should be dismissed; and, further, that plaintiff Public Citizen lacks standing and a capacity to sue, thereby warranting dismissal of the causes of action stated by that plaintiff; and that defendants are not real parties in interest the issues raised in this action and, therefore, should be dismissed as parties; and that the Court should abstain from exercising jurisdiction in this matter.

Dated: Syracuse, New York
        March 27, 2007

ANDREW M. CUOMO
Attorney General of the State of New York
Attorney for Defendants Thomas J. Cahill,
Diana Maxfield Kearse, Gary L. Casella, Rita E.
Addler, Mark S. Ochs, Anthony J. Gigliotti,
Daniel A. Drake and Vincent L. Scarsella

*s/Patrick F. MacRae*
_____
PATRICK F. MACRAE
Assistant Attorney General, of Counsel
Bar Roll No. 102091
615 Erie Boulevard West, Suite 102
Syracuse, New York 13204
Telephone: 315-448-4800
Fax: 315-448-4851 (Not for service of papers)
Email: Patrick.MacRae@oag.state.ny.us

TO:    Scott L. Nelson, Esq. (by electronic filing)
       Gregory A. Beck, Esq. (by electronic filing)
       Brian Wolfman, Esq. (by electronic filing)