UNITED STATES  DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
-------------------------------------------x
JAMES L. ALEXANDER; ALEXANDER & CATALANO LLC;
PUBLIC CITIZEN, INC.,

                              Plaintiffs,

vs.                                2007-CV-117

DIANA MAXFIELD KEARSE, in her official
capacity as Chief Counsel for the Grievance
Committee for the Second and Eleventh
Judicial Districts, et al.,

                              Defendants.

-------------------------------------------x

        Transcript of Motion Argument held on

April 13, 2007, at the James Hanley Federal

Building, 100 South Clinton Street, Syracuse,

New York, the HONORABLE FREDERICK J. SCULLIN, JR.,

Senior Judge, Presiding.



            A P P E A R A N C E S

For Plaintiffs:    PUBLIC CITIZEN LITIGATION GROUP
                   1600 20th Street N.W.
                   Washington, D.C.  20009
                     BY:  GREGORY A. BECK, ESQ.
                          BRIAN WOLFMAN, ESQ.

For Defendants:    NEW YORK STATE ATTORNEY GENERAL
                   615 Erie Boulevard West
                   Suite 102
                   Syracuse, New York  13204
                     BY:  PATRICK F. MacRAE, ESQ.



            JODI L. HIBBARD, RPR, CRR, CSR
                 (315) 234-8547

Dockets.Justia.com

2

```
 1                    (Open Court, 11:10 a.m.)

 2                    THE COURT:  Which order are we hearing the

 3      motions here first?

 4                    THE CLERK:  I have Alexander & Catalano first.

 5                    THE COURT:  All right.

 6                    THE CLERK:  Court now calls James L.

 7      Alexander, Alexander & Catalano, Public Citizen, versus Diana

 8      Maxfield Kearse, et al., it's 07-CV-117, appearances for the

 9      record, please.  Appearances for the record.

10                    MR. BECK:  My name is Greg Beck, your Honor, I

11      represent the plaintiffs.  I'm here with my co-counsel Brian

12      Wolfman, and my client James Alexander is also here at

13      counsel table.

14                    THE COURT:  Good morning, thank you,

15      gentlemen.

16                    MR. MacRAE:  Your Honor, Patrick MacRae,

17      New York State Attorney General's office for the defendants

18      herein.

19                    THE COURT:  Thank you, Mr. MacRae.  Is that

20      why we have so many lawyers here today?  I assume it is.

21      Anyway, interesting lawsuit.  Let me ask first of all -- I'm

22      sorry, Mr. Wolfman?

23                    MR. BECK:  I'll be arguing today, your Honor.

24      Mr. Beck.

25                    THE COURT:  All right, Mr. Beck.  You
```

1    represent both Alexander & Catalano and the Public Citizen,

2    Inc.?

3                    MR. BECK:  That's correct, your Honor, we

4    represent all the plaintiffs.

5                    THE COURT:  But you're a not-for-profit

6    organization, is that correct?

7                    MR. BECK:  Public Citizen is a not-for-profit

8    corporation, that's right.

9                    THE COURT:  All right.  There's not a problem

10   with that?  I've never seen that before where a

11   not-for-profit organization represents individuals as well.

12                   MR. BECK:  I don't -- I'm not aware of any

13   problem.  We've certainly, we have a litigation group within

14   Public Citizen, we do a fair number of cases in federal and

15   state court.

16                   THE COURT:  Are you retained by outside people

17   to do work for them as well?

18                   MR. BECK:  Yes, definitely, your Honor.  We

19   have -- we're a 10-attorney nonprofit law firm which is part

20   of the Public Citizen umbrella organization.  Public Citizen

21   litigation.

22                   THE COURT:  Mr. Alexander, you're a member of

23   this group here, citizen group?

24                   MR. ALEXANDER:  No, I'm not a member as yet.

25                   THE COURT:  You're not?

4

1          MR. ALEXANDER:  No, but having found out the

2    good works they do, we do intend to join.

3          THE COURT:  You may want to join after the

4    lawsuit because otherwise you may have a problem representing

5    Mr. Alexander, if he's a member.  For standing purposes.

6          MR. BECK:  Well, your Honor, we're asserting

7    different bases for standing as for different parts of the

8    lawsuit, but we can bring a suit on behalf of our members in

9    New York and that's the basis of Public Citizen standing in

10   the case, which I think is separate from the standing that

11   Alexander & Catalano and James Alexander bring to the case,

12   which is as individual attorneys who are directly affected by

13   that.

14          The Supreme Court in *Virginia Board of*

15   *Pharmacy* and in subsequent cases has made it clear that the

16   main purpose of the commercial free speech doctrine is to

17   protect consumers in their ability to access information, and

18   in fact in the *Virginia Board of Pharmacy* case itself, the

19   plaintiffs were a consumer group, they were consumer groups,

20   not individual pharmacists and the first holding of the court

21   in that case was that those consumer groups had standing to

22   bring an action, a First Amendment action on behalf of their

23   members in the state.

24          THE COURT:  Well, we're going to jump right

25   into the standing issue then, which is part of your

1    cross-motion, Mr. MacRae, and I think it's probably

2    appropriate we deal with your cross-motion before we discuss

3    the substance of the motion by the plaintiff here for

4    preliminary injunction.  The standing issue that I brought up

5    and that Mr. Beck is addressing here is somewhat of a

6    problem.  You've pointed out here in your argument that you

7    do not feel that the organization has standing to

8    represent -- to take part in this lawsuit.

9                  MR. MacRAE:  That's correct, your Honor.  The

10    fundamental basis for the state's position or for the

11    defendant's position with regard to the standing issue is

12    that -- I should back up just a moment, your Honor, and say

13    that in -- I have received counsel's reply to my papers and

14    as one of the exhibits they attached an affidavit of someone

15    who had indicated that all corporate fees had been paid by

16    Public Citizen so having no -- nothing to refute that, I

17    really don't have any basis for arguing further on that

18    point.

19                  However, the entity itself argues that it has

20    standing in this case because of a potential for harm to the

21    organization and yet all it has as a connection to New York

22    State by its own acknowledgment is the presence of some

23    members who happen to join an out-of-state organization by

24    having paid a certain annual fee to the organization to

25    support its mission which its websites indicate are largely

6

1    focused on legislative matters and things of that sort at the

2    federal level.  The -- there is no indication that it has any

3    presence in New York, it says that it -- that if these, if

4    this injunction is not granted, that it would have a

5    potential risk of harm in the event that it should seek to

6    represent some of its members on a pro bono basis in

7    New York, but there's no indication that it -- at least

8    there's no allegation in the papers that it has or even has

9    any intention to actually do so.

10              That being the case, your Honor, it, it's --

11   what they're really relying on then is just simply the mere

12   transmission of website information that can be received in

13   New York.  And as the Court is aware, I'm sure, do a website

14   search and you get, you can get things from jurisdictions far

15   removed from wherever you may live.

16              THE COURT:  Well, I don't know what criteria

17   you're referring to, what case would hold that that's

18   necessary, Mr. MacRae, but I will point out that as the

19   defendants have, or plaintiffs have identified, there is a

20   leading case here, dealing with standing, association

21   standing, *United Food & Commercial Workers*, which they cite

22   in their reply papers, and that case is Supreme Court 1996,

23   made it clear that an association has standing to sue on

24   behalf of its members when a member would have standing, the

25   interests to be protected are germane to the association's

1   purpose, and neither the claim nor the relief requested

2   require the participation of its members.  That's why I was

3   getting to that point, Mr. Beck, about Mr. Alexander, whether

4   he's a member or not.  But you only argue the association

5   standing in your papers.

6              MR. BECK:  That's right, your Honor, we're

7   solely asserting at least at this point that our standing

8   comes from our members in New York.

9              THE COURT:  And that's the criteria they need

10  to meet, Mr. MacRae.

11             MR. MacRAE:  The problem that I see with that,

12  though, your Honor, is that there's no indication that the

13  members have any interest in this action.  There's -- there's

14  a representation that merely because there are members in

15  New York State, that gives them standing.  But in reality,

16  there's no indication that those members are in any fashion

17  affected by or influenced by whatever the outcome of this

18  case may be.

19             THE COURT:  Well, the papers seem to indicate

20  that they are, there are First Amendment issues are involved

21  and there are members here in New York State.

22             MR. MacRAE:  Only, however, if Public Citizen

23  were to, were to proceed, were to actually practice in

24  New York.  It says that, in its papers, it says it only is a

25  potential impact in the event that if it should seek to -- I

1     can't think of the word.

2              THE COURT:  So you're saying that the

3     interests to be protected are not germane to the

4     association's purpose, is that what you're saying?

5              MR. MacRAE:  That's correct.

6              THE COURT:  All right.  Mr. Beck, as to that

7     point?

8              MR. BECK:  Well, your Honor, as a preliminary

9     matter I should just point out there's been no challenge to

10    the standing of Alexander & Catalano and James Alexander.

11             THE COURT:  That's true.  I'm not addressing

12    their position at this point, talking about the organization.

13             MR. BECK:  I just wanted to set that part

14    aside.  And as you correctly identified, your Honor, the

15    pressing *United Food & Commercial Workers* does not include

16    any requirement of the sort that the state seeks to impose,

17    that members have some sort of leadership role in the

18    organization, that's simply not an element of the test.  And

19    multiple other cases hold that members have standing, that

20    organizations have standing on behalf of their members.

21    Another case you could look at is *Havens Realty v. Coleman*,

22    455 U.S. 363 which holds that an organization may assert

23    claims on behalf of its members when its members suffer an

24    injury, as a result of the challenged regulation.

25             THE COURT:  Well, Mr. MacRae's attacking one,

1    the one criteria they are attacking is whether or not your

2    interests is germane to the purpose of the organization, you

3    argue that it is.

4                    MR. BECK:  And as we explain in our brief,

5    your Honor, Public Citizen is an organization devoted to free

6    speech and consumer rights issues.  We've been involved in

7    attorney advertising and commercial free speech issues since

8    the *Virginia Board of Pharmacy* case in 1976 which we, in

9    which we represented the consumer rights groups in that case,

10   and we've consistently advocated on behalf of consumers'

11   rights to receive commercial information that may be of

12   interest to them.

13                   And I just want to make clear that we're not

14   simply, I think the defense is confusing the idea that Public

15   Citizen is directly impacted by advertising in the state

16   against with -- with the Public Citizen's interest in

17   protecting its members' rights to receive information, and

18   we're not just saying that we want to advertise in the state,

19   we're saying that our members have a right to receive

20   advertising from any lawyer and it could be a lawyer down the

21   road, not necessarily Alexander & Catalano, not Public

22   Citizen, but some other lawyer who needs to distribute

23   commercial information to consumers, and that's the kind of

24   situation that *Virginia Board of Pharmacy* deals with,

25   which -- in which consumers are actually cut off from

1    information that they have interest in and that's the sole

2    basis of standing that we're asserting at this point.

3                    THE COURT:  And I think you summed it up, it's

4    the need for your consumers, association members, consumers

5    to receive information about the availability and quality of

6    legal services.

7                    MR. BECK:  That's correct, your Honor.

8                    THE COURT:  Now as to the participation or

9    need for participation by any member of your association,

10   your position is there is no need for it?

11                   MR. BECK:  No, your Honor, there's no members

12   of the organization who've been involved in the litigation

13   directly and there will be no need for that.

14                   THE COURT:  Let me skip back now, kind of

15   jumped over a couple other points that the defense

16   cross-motion had brought forward.  Whether or not there are

17   proper parties involved here.

18                   MR. BECK:  Well, your Honor, I think that the

19   defendant's brief pretty much sums up the important role that

20   chief counsels play in the important role process.

21                   THE COURT:  Let me just ask Mr. MacRae then,

22   isn't it true, Mr. MacRae, that the chief attorney may

23   investigate, do investigation of complaints of attorney

24   misconduct, given the fact they're involved with some degree

25   of enforcement and decision making with respect to the

1    enforcement, doesn't that satisfy *Ex Parte Young* requirement

2    that they have some connection with the enforcement of the

3    act and be a properly named party?

4                MR. MacRAE:  Your Honor, the chief counsel

5    serve only as a functionary of the committees which are

6    empowered only through the appellate divisions.  The chief

7    counsel do not investigate except on the receipt of

8    complaints or information provided to them.  They do not have

9    any independent power or authority to act except in the

10   capacity given to them by the committee which receives its

11   authority from the appellate divisions.

12               THE COURT:  But they are involved with some

13   enforcement by virtue of their office.

14               MR. MacRAE:  Well, they are, I don't know that

15   that's actually an accurate description of it, your Honor.

16   The committee --

17               THE COURT:  Well, the duties do include

18   initiating investigations.

19               MR. MacRAE:  Yes.

20               THE COURT:  They do include making

21   recommendation concerning whether a complaint proceeds to a

22   formal disciplinary proceeding.

23               MR. MacRAE:  Correct.

24               THE COURT:  The duties they have, the officer

25   has, as such, aren't they acting as enforcement officers?

1              MR. MacRAE:  They, only -- they're only able

2      to enforce if given that authority to do so by the committee.

3              THE COURT:  But that's their job, I understand

4      that, but their job is to do that.

5              MR. MacRAE:  Yes.

6              THE COURT:  Regardless of what source they

7      have for that authority, whether it be statutory, whether it

8      be committee decision, their job is to enforce.

9              MR. MacRAE:  That's -- well --

10             THE COURT:  Doesn't that satisfy *Ex Parte*

11     *Young*?

12             MR. MacRAE:  Well, your Honor, no, I don't

13     believe so, because I think if, we need to step back and look

14     at what enforcement is.  To enforce the disciplinary rules is

15     an act of enforcement rather than just simply the

16     presentation of information from which an enforcement can be

17     undertaken.  I believe that in the use of the -- of the

18     disciplinary rules, it's the appellate division that

19     actually -- that actually enforces.  The counsel will

20     investigate the allegations and they will make

21     recommendations to the committee which then can either accept

22     or reject, essentially, accept or reject those

23     recommendations.  If they accept them, then counsel is given

24     the responsibility to move forward and present the results of

25     their investigation to the appellate division from which a --

1    the more formal disciplinary process can be -- can unfold.

2    But the counsel have no independent authority to act on their

3    own, and yet the appellate division and committee has an

4    independent responsibility to proceed with enforcements

5    regardless of their -- of their chief counsel.

6              THE COURT:  Mr. Beck, do you wish to reply on

7    that?

8              MR. BECK:  Well, your Honor, I think the

9    defense is just confusing the concepts of enforcement and

10   adjudication.  For example, if a plaintiff wanted to enjoin

11   an unconstitutional law, federal law, they would sue the

12   prosecutor, not you, your Honor, the judge, who would be

13   ultimately responsible for making the decision.

14             THE COURT:  Isn't it true when a complaint

15   comes in, that the officer would have the authority to

16   initiate an investigation?

17             MR. MacRAE:  I'm sorry, your Honor?

18             THE COURT:  Without going before the appellate

19   division, the officer would have the authority to initiate

20   the investigation, the chief attorney?

21             MR. MacRAE:  Chief attorney would have the

22   authority to undertake an investigation if --

23             THE COURT:  When a complaint comes in, the

24   chief attorney has the authority to undertake an

25   investigation, yes?

1          MR. MacRAE:  I believe that it first goes to

2    the committee for an evaluation to determine whether or not

3    there would be a basis to undertake an investigation.

4          THE COURT:  How can they tell if it's a mere

5    complaint without the investigation?  I think you may be

6    misunderstanding the role of the chief attorney there.  My

7    understanding is, correct me if I'm wrong, that when the

8    complaints come in, his office initiates investigations, as

9    Mr. Beck says, and then you have the result of that

10   investigation going before the appellate division, am I wrong

11   about that?

12         MR. MacRAE:  Let me just take for just a

13   second, your Honor, I think I just need to -- a little

14   clarification on what -- on a fine point of that.

15         THE COURT:  I thought, in fact I thought you

16   conceded to that in your papers, it was the duty of the chief

17   attorney to initiate investigations.

18         MR. BECK:  Your Honor, I think I understand

19   how the process works if you don't mind if I jump in.

20         THE COURT:  All right, what's your view of it?

21         MR. BECK:  From my understanding of the

22   regulations, the defendants cite the chief attorney is the

23   one that receives the complaints in the first instance,

24   initiates an investigation and if the attorney believes that

25   there's cause to bring charges, then brings the charge in

1   front of the disciplinary committee and at that point

2   recommends an outcome.  That's how the process --

3                THE COURT:  That's how I understand it to be.

4                MR. MacRAE:  That's correct.

5                THE COURT:  It doesn't go initially to the

6   appellate division.

7                MR. MacRAE:  That is correct, your Honor.

8                THE COURT:  So I think we have satisfaction

9   notwithstanding your arguments that the *Ex Parte Young*

10  doctrine does apply, that the criteria has been met.  So I'm

11  going to deny your motion on that grounds and also on the

12  standing grounds.

13                Now with respect to right to sue, you suggest,

14  Mr. MacRae, that the Public Citizen is prohibited by the

15  New York State Business Law, but I think now that you've

16  received some reply on that matter, that section of law

17  doesn't, you're referring to 1312(a), does not apply, does

18  it?

19                MR. MacRAE:  That's correct, your Honor.

20                THE COURT:  All right.  So we don't have any

21  issue there.

22                And lastly, in your cross-motion, you ask the

23  Court to consider abstaining from deciding the issue until

24  New York State has had an opportunity to review and decide

25  the matter, and I think you're referring to the *Burford*

1    abstention doctrine, are you not?

2         MR. MacRAE:  Yes, your Honor.

3         THE COURT:  All right.  And on that, as the

4    court makes quite clear, is appropriate in cases "involving

5    complex issues of state law for which the state has

6    specialized knowledge and a centralized system for judicial

7    review."  That's not the case here, though, is it?

8         MR. MacRAE:  I believe it is, your Honor.  In

9    this case we have rules of attorney conduct that are

10   extensive and broad, and there is a very thorough and

11   complete system in place for the application of those rules,

12   and it consists, as we've indicated, the initiating with

13   the -- or beginning with the investigation, determination as

14   to whether anything was done improperly, at that point it can

15   then be, it can be resolved either at the committee level, if

16   not at that point, then it would go to the appellate division

17   and from the appellate division it would go directly to the

18   New York State Court of Appeals for final resolution.

19        THE COURT:  Well, that may be, but the only

20   issue before this court is the federal claim challenging the

21   constitutionality of the rules under the First Amendment.

22        MR. MacRAE:  Yes, and constitutionality is

23   always available as a defense in any of the proceedings

24   before --

25        THE COURT:  But that's the only issue before

1   this court, it's not a complex state issue which I need to

2   defer to the state courts for.

3                MR. MacRAE:  Well, your Honor, the counsel

4   quoted in his reply papers the *Felmeister* case, and although

5   it did actually support their proposition that the court

6   elected not to abstain under the circumstances that presented

7   which were essentially the same as what we have here where

8   there are rules that have been asserted and, or rules that

9   are being challenged, but there has been no underlying

10  proceeding commenced by the disciplinary committee, and

11  thereby no way to really assess how the disciplinary

12  committees or the appellate division would even interpret

13  these new rules.  There was a determination in *Felmeister*

14  that even though they, the Second Circuit, or excuse me, the

15  Third Circuit in that case found that abstention wasn't

16  appropriate, that the case should nonetheless be dismissed on

17  ripeness grounds, and I would suggest to the Court that even

18  if abstention wasn't to be considered here, that on the basis

19  of what counsel for the plaintiffs have submitted, that

20  ripeness is clearly an issue to allow the state courts to

21  assess its own rules and make a determination as to the

22  constitutionality of them.

23                THE COURT:  Mr. Beck, as to the ripeness

24  issue, is there a ripeness issue here?

25                MR. BECK:  There's not a ripeness issue, your

1    Honor.  *Felmeister* discussed ripeness but in that particular

2    case the plaintiff had not identified exactly how his

3    particular ads would violate the regulations and the court

4    was concerned about that, and concerned about how it would

5    adjudge whether the rules would affect that lawyer if the

6    lawyer couldn't explain how his ads were affected by the

7    rules.

8            Since *Felmeister* was decided, there have been

9    two or three Supreme Court cases that have involved similar

10   situations to this, where a professional has sought to

11   advertise but because of a regulation, has refrained from

12   doing so, forced to refrain from doing so and thus was able

13   to bring a 1983 claim in federal court.

14           In particular that happened in the *Went For It*

15   case and *Edenfield* case as well.  And you might -- two cases

16   that really discuss this in detail are the *Ficker* case, which

17   is Fourth Circuit case cited in the briefs, where the Court

18   specifically addresses the question of what to do when an

19   attorney sues to enjoin allegedly unconstitutional attorney

20   advertising regulations, but hasn't actually been brought up

21   on disciplinary charges yet.  In that case the court held

22   that as long as, this comes from a line of Supreme Court

23   cases including *Steffel v. Thompson*, that if the attorney is

24   forced to refrain from engaging in speech that the attorney

25   otherwise would have engaged in, in that case then a claim

1    will lie, there is standing and the claim is ripe for

2    adjudication.  And that --

3                 THE COURT:  What's the cite on that case?

4    You're supposed to know it off the top of your head, come on.

5    This is just a test, all right, never mind.

6                 MR. BECK:  I have it right here, your Honor.

7                 THE COURT:  Never mind.

8                 MR. BECK:  119 F.3d 1150, and the *Schwartz v.*

9    *Welch* case also I would draw your attention to which is

10   Southern District of Mississippi which is in our briefs as

11   well and that's 890 F.Supp. 565, it discusses the same issue.

12   There's been innumerable cases where attorneys have brought

13   lawsuits against disciplinary rules.

14                THE COURT:  Is there a way to unwind him or

15   once he's wound up, you got to let it run down?  I've got

16   your point, thank you, and I think you have the law on your

17   side on this one without going much deeper than this.  I

18   don't think the *Burford* abstention applies here, Mr. MacRae,

19   and I'm going to deny your motion on that grounds as well.

20                So with respect to your cross-motion, denied

21   on all four grounds, but that brings us back to the motion

22   for preliminary injunction.

23                First issue I wish to address with you, I

24   don't know if I stated it or not, but for the record, the

25   plaintiffs had requested the Court to grant a preliminary

1    injunction preventing the enforcement of the selected

2    provisions of the New York Disciplinary Rules of New York's

3    Code of Professional Responsibility which took place on --

4    took effect on February 1st, 2007.

5                    Now generally speaking, the proponent of a

6    preliminary injunction must establish that it will suffer

7    irreparable harm in the absence of an injunction and either a

8    likelihood of success on the merits, or a sufficiently

9    serious question going to the merits to make them a fair

10    ground for litigation and a balance of hardships tipping

11    towards them.  However, when a proponent challenges

12    government action taken in the public interest, pursuant to

13    statutory or regulatory scheme, it has to go a little

14    further; in addition to establishing irreparable harm, it

15    must establish that there is in fact a likelihood of success

16    on the merits.

17                    Now here in this case, we have something

18    additional as well, if the injunction would alter the status

19    quo rather than maintain it; in other words, if the

20    injunction is an affirmative direction, mandatory direction,

21    rather than prohibitory direction, the proponent must show by

22    a clear and substantial basis there is a likelihood of

23    success on the merits.

24                    And gentlemen, I think that's where we are on

25    this case.  You wish to be heard on that?

1          MR. BECK:  Yes, your Honor.

2          THE COURT:  All right, Mr. Beck.

3          MR. BECK:  Well, as you observe, your Honor,

4    the key issue in this case is the likelihood of success on

5    the merits.  And the state seeking to restrict the

6    fundamental right of freedom of speech faces a very heavy

7    burden.  The state in this case has simply failed to carry

8    that burden.  In fact the state cannot justify its

9    regulations based precisely on the source of the grounds that

10   the Supreme Court has repeated --

11         THE COURT:  Well, before you get to the

12   merits, let's talk about the standard.

13         MR. BECK:  Okay.

14         THE COURT:  That's what we're talking about, I

15   believe the standard, based upon what you're asking this

16   court to do here, is going to alter the status quo, because

17   you already have, you already have the rules in effect being

18   applied, and secondly, it is more of a requirement that

19   things change and the heightened standard should, it's more

20   prohibitory than mandatory, wouldn't you say?

21         MR. BECK:  Yes, your Honor, I'm sorry if I

22   misunderstood your initial question, and yes, we believe it's

23   purely prohibitory, it purely seeks to prohibit enforcement

24   of rules that are already in effect.  We're not asking for

25   anything to change, simply for the duration of the

1   litigation, the rule should not be enforced, and that relief

2   is in no way complete and no way requires mandatory action on

3   behalf of any government officials.

4              THE COURT:  Well, one thing, it will alter the

5   status quo, but even though it's prohibitory rather than

6   mandatory, would you have to have complete relief if I grant

7   the preliminary injunction, wouldn't it be the same as being

8   successful on the merits?

9              MR. BECK:  No, your Honor, because the relief

10  would be purely temporary, it would only be relief for the

11  length of the litigation.

12             THE COURT:  But it would be the relief you're

13  asking for.

14             MR. BECK:  Temporary complete relief, that's

15  right, but the kind of complete relief that's dealt with in

16  the case, and the line of reasoning that you're talking about

17  is, for example, if a plaintiff brings a complaint to allow a

18  parade that was prohibited by state officials, the parade

19  happens, at that point the plaintiff's gotten all the relief

20  that the plaintiffs, once the case is over, it need not go

21  any further.

22             THE COURT:  Similarly here, the advertising

23  would go forward, once the advertising is out there, you

24  can't withdraw it, it's done, it's over, out there.

25             MR. BECK:  For the duration of the litigation,

1    but --

2                        THE COURT:  For whatever ads are able to be

3    received and to be promoted during that period of time, yes.

4                        MR. BECK:  But your Honor, I respectfully

5    would suggest that I just don't think that that can be

6    characterized as complete relief because that, I mean that's

7    a typical situation in a preliminary injunction.

8                        THE COURT:  Until and unless it's changed,

9    it's complete relief, right?

10                       MR. BECK:  Right, and the complete relief

11   looks at, whether what you get in the preliminary injunction

12   is all you're asking for in the case, that's not all we're

13   asking for, we're also asking for permanent injunction and

14   declaratory judgment that the rules are unconstitutional.

15                       THE COURT:  Mr. MacRae, you want to address

16   that point, whether it's necessary to show it's a permanent

17   injunction, do they have complete relief?

18                       MR. MacRAE:  Your Honor, as you have pointed

19   out, during the period of the preliminary injunction would be

20   in effect, plaintiffs would have complete relief that's

21   sought in the complaint.  The harm that would be affected by

22   that is, has occurred on every time that an ad is put out

23   there, and assuming that there is merely a possibility of

24   success on the merits, there's an equal possibility at least

25   of -- or at least there's -- there is also a possibility of,

1    that the plaintiffs will not be successful on the merits.  In

2    which case during that, if the injunction is then

3    subsequently denied and the rules are found to be

4    constitutional, then for the entire period before that

5    decision is made, the public has been continue -- has

6    continued to suffer the insult of the improper advertising.

7                    And I should point out, your Honor, that

8    what's important to keep in mind here is that this is not a

9    ban on advertising, this is a -- this is merely a restriction

10    in certain forms of advertising.  To the best of my

11    knowledge, I'd have to say, your Honor, first that prior to

12    my involvement in this case, I never saw any of these ads

13    that we have on CD before the Court.  However --

14                    THE COURT:  Mr. Alexander, he hasn't seen any

15    of your ads, you better do a little more research, get a few

16    more stations involved here.

17                    MR. MacRAE:  Have to involve public

18    television, your Honor, but on the other hand, since then I

19    have seen some of their ads which are still on TV since

20    the -- since these rules have gone into effect, obviously

21    they are modified to comply with the new rules.  But the fact

22    is that the plaintiff doesn't stand to suffer in the sense

23    that he's not prevented from -- or they're not prevented from

24    advertising, they're not prevented from having their internet

25    websites up and available to the public, but what does happen

1    if there is an injunction placed, put in place, even

2    preliminarily, is that the public is, continues then to be

3    subject, to be bombarded by the advertising that is the

4    subject of these new regulations.

5            THE COURT:  All right.  Well, I'm not sure,

6    arguably you may have a point on that temporary relief being

7    not quite total relief, Mr. Beck, but I think it's close

8    enough and I still think there is, you're altering the status

9    quo by granting this injunction, so I do think the higher

10    standard does apply, and I'm going to use that higher

11    standard.

12            Having said that, since I don't think,

13    Mr. MacRae, you've really addressed any of these issues in

14    detail because you focused on your cross-motion more than

15    anything else, I think your recommendation that we have a

16    consolidated trial on the merits for the motion is a good

17    one.  I think rather than go through this twice, we can have,

18    we can have a trial that will address the needs of both sides

19    as soon as possible.  So I'm going to apply the higher

20    standard, irreparable harm, I think both parties realize that

21    First Amendment issues normally meet that standard, but that

22    there must be a clear and substantial showing of likelihood

23    of success on the merits, all right.

24            Now, for a consolidated trial/hearing, how

25    many days do you think you'll need?  I know you haven't gone

1   through discovery yet, so can you give me an idea?

2                   MR. BECK:  Your Honor, first just to clarify,

3   I just want to know if this means that you're denying our

4   motion for preliminary injunction.

5                   THE COURT:  I'm reserving on it, I'm going to

6   consolidate it.

7                   MR. BECK:  As far as plaintiffs are concerned,

8   your Honor, it's clear to us that the defendants aren't --

9   don't have any evidence to present and I would, I would

10  request that your Honor ask defendants if they intend to

11  present any evidence.  If they do intend to present evidence,

12  then I think it's reasonable to give them some time, but I

13  also think that in the meantime, the preliminary injunction

14  should go into effect to protect my clients' First Amendment

15  rights which is an irreparable harm.

16                  THE COURT:  I'm sure you do believe that, I

17  have no question you believe that.  The ruling of the Court

18  is that I'm going to reserve on the motion and consolidate it

19  with the trial on the merits pursuant to Rule 65(a)(2) of the

20  Federal Rules of Civil Procedure.  And as you asked for in

21  the alternative in your papers, I think it's a good

22  suggestion.

23                  We need to set a date for it, that's why I'm

24  asking how many days it will be.  Mr. MacRae, there is some

25  discovery you have to provide with respect to the basis for

1    some of these findings when you implemented the amended

2    rules, so you'll need to do that.

3                    MR. MacRAE:  Yes, your Honor, and I would also

4    ask for some discovery from the plaintiffs since they have

5    alleged specific economic damages as a result of the

6    imposition of these rules.  So I do believe there is -- there

7    is discovery that would be necessary for the trial of the

8    matter.

9                    THE COURT:  Well, there's no question about

10   that.  Now, you do have a Rule 16 conference at least

11   scheduled I believe with Magistrate Judge Lowe, when is that

12   scheduled for, is it June?

13                   MR. MacRAE:  I believe it is June, your Honor.

14                   THE COURT:  16th or something.  I saw it

15   earlier.

16                   MR. MacRAE:  I didn't bring it with me so I

17   don't know offhand.

18                   THE COURT:  Could probably expedite that if

19   you wish, might be a good idea, contact Magistrate Judge

20   Lowe.

21                   MR. BECK:  We would appreciate that, your

22   Honor, because we would like relief as soon as possible.

23                   THE COURT:  All right.  Now, if we look to a

24   trial on the merits here, we're talking two or three days, I

25   wouldn't think any longer than that, it's nonjury.

1          MR. MacRAE:  Yeah.

2          THE COURT:  Because of injunctive relief.

3          MR. MacRAE:  I would think two- or three-day

4    trial, bench trial would be sufficient.

5          MR. BECK:  I agree, your Honor.

6          THE COURT:  All right.  Can we find a date?

7    Our soonest, we looked at this earlier, as I recall our

8    soonest date is going to be in June.

9          THE CLERK:  June 18th.

10          THE COURT:  June 18th, how does that fit into

11    your schedules?

12          MR. MacRAE:  For trial?

13          THE COURT:  For trial.

14          MR. BECK:  That should be fine, your Honor.

15          THE COURT:  All right.  We'll have to advance

16    this with discovery with Magistrate Judge Lowe so contact him

17    right away, you contact him right away, advise him what's

18    going on.

19          Let me focus you on what I think is important

20    for the trial on the merits.  A lot of it will depend on your

21    discovery.  And it really needs to focus on the clear and

22    substantial likelihood of success on the merits, as I said,

23    Mr. MacRae, I don't think the irreparable harm issue is going

24    to be that difficult for the plaintiffs to overcome.

25          I would suggest that you follow the *Central*

1   *Hudson Gas & Electric Corporation* criteria, and that is if

2   the government seeks to regulate speech that is not

3   inherently misleading, although you may suggest that it is,

4   but where it is not inherently misleading or speech that has

5   potential to be presented in either misleading or

6   nondeceptive manner, the government is required to, 1, assert

7   a substantial interest in support of the regulation; 2,

8   demonstrate that the restriction directly and materially

9   advances the interest of the government, public interest; and

10  3, establish that the restriction is narrowly drawn,

11  especially the last two bases.  I think we need to focus on

12  that.  I think in many respects you already have, but I don't

13  think the defendant has done so as of yet but I think that

14  needs to be done.

15          I would also suggest you maybe break this down

16  into different categories because you have different rules

17  here.  Let me suggest this to you.  It may be easier for the

18  Court to follow I think for the development in the course of

19  the trial for us to decide the issues if you break it down in

20  these three categories.

21          First, the plaintiffs have challenged rules

22  concerning misleading advertisements.  The amendments I think

23  are 22 NYCRR Section 1200.6(c) which prohibits endorsements

24  and testimonials on matters still pending, portrayals of

25  judges, techniques to obtain attention which lack relevancy

1   to selecting counsel, portrayals of lawyers with

2   characteristics unrelated to legal competence, and also the

3   pop-up advertisements.  That could be one category, that area

4   there.

5             The second, plaintiffs challenge 30-day

6   blackout rules for contacting injury or wrongful death

7   victims, personal injury or wrongful death victims.  That

8   could be a different category because I think they're

9   different issues involved.

10            Third, the plaintiffs challenge the rules as

11  they apply to lawyers whose primary purpose is not pecuniary

12  gain, such as the Public Citizen.  I think those are three

13  different categories to be addressed separately, all right?

14  Any questions about this?

15            MR. MacRAE:  No, your Honor.

16            THE COURT:  Okay.

17            MR. BECK:  One moment.

18            THE COURT:  All right.

19            (Pause in Proceedings.)

20            MR. BECK:  Your Honor, I just wanted to raise

21  one point which is that we suspect that much of the disputed

22  facts, to the extent there are any in this case, the facts I

23  should say will be able to be resolved through stipulations

24  and similar methods and we wanted to bring to your attention

25  the possibility that at some point it might make sense to

1    resolve the case on a summary judgment basis rather than on a

2    trial basis.

3              THE COURT:  It may be.  I think I need to have

4    more discovery, I need to have more information from the

5    defense side here before I can really make any rulings.

6              MR. BECK:  All right, thank you, your Honor.

7              THE COURT:  All right.  So let's look for that

8    as a trial date.  If it can be resolved short of that, fine,

9    but I will make sure both of you contact Magistrate Judge

10   Lowe and we'll let him know today that's forthcoming as soon

11   as he can fit it into his schedule, all right?  Thank you,

12   gentlemen.  Appreciate your arguments.

13             MR. BECK:  Thank you, your Honor.

14             (Court Adjourned, 11:54 a.m.)

15

16

17

18

19

20

21

22

23

24

25

1                    C E R T I F I C A T I O N

2

3

4                    I, JODI L. HIBBARD, RPR, CRR, CSR, Official

5    Court Reporter in and for the United States District Court,

6    Northern District of New York, DO HEREBY CERTIFY that I

7    attended the foregoing proceedings, took stenographic notes

8    of the same, and that the foregoing is a true and correct

9    transcript thereof.

10

11

12

13

14

15

16

17                        _____

18                        JODI L. HIBBARD, RPR, CRR, CSR
                          Official U.S. Court Reporter
19

20

21

22

23

24

25