UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| JAMES L. ALEXANDER, *et al.*, | ) |
| Plaintiffs, | ) Civil Action No. 5:07-cv-00117-FJS-GHL |
| v. | ) |
| THOMAS J. CAHILL, *et al.*, | ) |
| Defendants. | ) |

**MEMORANDUM IN SUPPORT OF PLAINTIFFS'
MOTION FOR ATTORNEYS' FEES AND COSTS**

Plaintiffs James L. Alexander, Alexander & Catalano, and Public Citizen prevailed on their motion for summary judgment in their First Amendment challenge to the constitutionality of New York's amended rules on attorney advertising. The Civil Rights Attorneys Fees Awards Act of 1976 permits a prevailing party in a § 1983 action to recover costs, including "a reasonable attorney's fee." 42 U.S.C. § 1988(b). "Although [§ 1988] expressly conditions the award of attorneys' fees upon the discretion of the court, the effect of this language has been interpreted to create a strong preference in favor of the prevailing party's right to fee shifting." *Wilder v. Bernstein*, 965 F.2d 1196, 1201 (2d Cir. 1992). Thus, the Supreme Court has held that a prevailing plaintiff "should ordinarily recover an attorney's fee unless special circumstances would render such an award unjust." *Hensley v. Eckerhart*, 461 U.S. 424, 429 (1983) (internal quotation omitted). Pursuant to § 1988, plaintiffs seek an award of $59,255.50 in attorneys' fees and $1856.04 in costs. In support of this motion, plaintiffs attach the declarations of Gregory A. Beck and Brian Wolfman.

**I.    The Fee Award**

The Second Circuit requires that attorneys' fees for a prevailing party be computed based

-1-

on the "presumptively reasonable fee"—or what used to be called the "lodestar" amount. *Arbor Hill Concerned Citizens Neighborhood Ass'n v. County of Albany*, 493 F.3d 110, 111-12 (2d Cir. 2007). The presumptively reasonable fee is calculated by determining each attorney's reasonable hourly rate and multiplying it by the reasonable number of hours expended in the case. *Porzig v. Dresdner, Kleinwort, Benson, N. Am. LLC*, ___ F.3d ___, No. 06-1212, 2007 WL 2241592, at *5 (2d Cir. Aug. 7, 2007). In the Second Circuit, a party seeking to recover attorney's fees must submit time records that show "for each attorney, the date, the hours expended and the nature of the work done." *N.Y. State Ass'n for Retarded Children v. Carey*, 711 F.2d 1136, 1148 (2d Cir. 1983). These time records are attached to the Beck Declaration as Exhibit 2.

    **A.**    **Reasonable Hourly Rate**

        **1.**    **The Reasonable Hourly Rate Should Be Based on the Rates Charged by Counsel of Comparable Experience in Washington, DC.**

The "reasonable hourly rate" is the "prevailing hourly rate in the community." *Arbor Hill*, 493 F.3d at 118 (internal quotation and alternation omitted). As the Second Circuit recently clarified in *Arbor Hill*, the relevant community is not always the geographical district where the court sits. *Id.* at 118-21. Rather, "[t]he legal communities of today are increasingly interconnected," and "[t]o define markets simply by geography is too simplistic." *Id.* at 120. Thus, a Court may award fees at rates higher than the prevailing rate in the district if "a reasonable, paying client would have paid those higher rates." *Id.* at 119. In doing so, the Court should "bear in mind *all* of the case-specific variables that . . . courts have identified as relevant to the reasonableness of attorney's fees." *Id.* at 117.[1]

---

[1] Prior to *Arbor Hill*, courts set the reasonable hourly rate based on the rate charged in the district, and would adjust this rate upward or downward only on the showing of "extraordinary special circumstances." *Arbor Hill*, 493 F.3d at 111. Arbor Hill changed that approach, instead requiring only that the hourly rate—whether based on in-district or out-of-district rates—be based on what a "reasonable, paying client would be willing to pay." *Id.* at 111-12, 118-21.

Here, Alexander & Catalano was represented by Public Citizen Litigation Group (PCLG), a nonprofit public-interest law firm in Washington, DC. PCLG was chosen for its expertise in First Amendment litigation, and particularly its experience in commercial free speech cases. Beck Decl. ¶ 3. Among other cases, PCLG attorneys argued and won *Virginia State Board of Pharmacy v. Virginia Citizens Consumer Council*, 425 U.S. 748 (1976), in which the Supreme Court for the first time recognized a First Amendment right to commercial speech; *Zauderer v. Office of Disciplinary Counsel*, 471 U.S. 626, 646-47 (1985), in which PCLG successfully challenged the decision of the Ohio Supreme Court to discipline a lawyer for taking out ads informing the public about his legal services; and *Edenfield v. Fane*, 507 U.S. 761 (1993), in which the Supreme Court struck down a ban on in-person solicitation by certified public accountants. Beck Decl. ¶ 3. Public Citizen was among the plaintiffs who successfully challenged Mississippi's restrictive advertising rules in *Schwartz v. Welch*, 890 F. Supp. 565 (S.D. Miss. 1995). Beck Decl. ¶ 3. And PCLG has also challenged other anticompetitive bar rules that harm consumers. *See, e.g.*, *Goldfarb v. Va. State Bar*, 421 U.S. 773 (1975) (holding that a bar's minimum fee schedule violated the Sherman Act); *Frazier v. Heebe*, 482 U.S. 615 (1982) (striking down a federal court rule that prevented lawyers from competing across state lines). Beck Decl. ¶ 3.

PCLG was therefore uniquely qualified to represent plaintiffs in this litigation. No comparable group offering PCLG's experience and expertise exists in the Northern District of New York. *Id.* Moreover, plaintiffs' counsel Gregory A. Beck was unsuccessful in attempting to locate pro bono local counsel in the Northern District, despite contacting several attorneys there and seeking referrals from New York lawyers experienced in First Amendment litigation. *Id.* ¶ 7. Mr. Beck was repeatedly informed by the attorneys he contacted that they considered it

professionally risky to challenge the constitutionality of the actions of the Presiding Justices of the Appellate Division. *Id.* Both of these factors—the expertise of the lawyer and the need to import a lawyer from another forum—are relevant factors for determining a reasonable hourly rate. *R.V. v. N.Y. City Dep't of Educ.*, 407 F.3d 65, 81 n.17 (2d Cir. 2005); *Luciano v. Olsten Corp.*, 109 F.3d 111, 116 (2d Cir. 1997); *Polk v. N.Y. State Dep't of Corr. Servs.*, 722 F.2d 23, 25 (2d Cir. 1983). Indeed, this case is a paradigmatic situation where a reasonable, paying client would have retained out-of-district counsel.

Plaintiffs' attorneys are particularly justified in receiving their customary fee for work in this case because they took a significant risk in accepting the case on a pro bono basis. Plaintiffs brought claims only for declaratory and injunctive relief, and the complaint included no damages claims that would pay their fees if they should prevail. "[Section] 1988 was enacted in part to secure legal representation for plaintiffs whose constitutional injury was too small, in terms of expected monetary recovery, to create an incentive for attorneys to take the case under conventional fee arrangements." *Kassim v. City of Schenectady*, 415 F.3d 246, 252 (2d Cir. 2005); *see also Farbotko v. Clinton County*, 433 F.3d 204, 208 (2d Cir. 2005) ("Attorney's fees are authorized by [§ 1988] for parties prevailing on claims under 42 U.S.C. § 1983 in order to encourage the bringing of meritorious civil rights claims which might otherwise be abandoned because of the financial imperatives surrounding the hiring of competent counsel.") (internal quotation omitted). Moreover, if Washington, DC-based counsel were awarded reduced fees for litigating in the Northern District, they would be more likely to focus their resources in other districts where their services may not be needed as badly. *See R.V.*, 407 F.3d at 81 ("[T]here is good reason for a district court not to be wed to the rates in its own community. If they are lower than those in another district, skilled lawyers from such other district will be dissuaded from

taking meritorious cases in the district with lower rates."). The fees awarded should be "adequate to attract competent counsel." *LeBlanc-Sternberg v. Fletcher*, 143 F.3d 748, 763 (2d Cir. 1998) (internal quotation omitted). Plaintiffs therefore request rates similar to those charged by counsel of comparable experience in Washington, DC.

### 2. The Laffey Matrix Provides the Best Indicator of Reasonable Hourly Rates for Washington, DC Counsel.

To establish hourly rates for its work, PCLG ordinarily uses the so-called "Laffey Matrix," a copy of which is attached as Exhibit 1 to the Beck Declaration. Beck Decl. ¶ 8. The Laffey Matrix is a fee matrix promulgated annually by the United States Attorney for the District of Columbia. Courts frequently use it to determine the market rate for work done by lawyers practicing in the Washington, DC metropolitan area, based on when the work was performed and the lawyer's years of experience. *Id.*; *see, e.g., Does v. District of Columbia*, 448 F. Supp. 2d 137, 140-41 (D.D.C. 2006). In the past, many courts have awarded fees to PCLG attorneys based on Laffey rates. Beck Decl. ¶ 8. The current Laffey rates for PCLG attorneys Brian Wolfman and Gregory A. Beck are $440 per hour and $215 per hour, respectively. *Id.*[2]

Mr. Wolfman is director of PCLG, where he has practiced since 1990. Mr. Wolfman is a 1984 law school graduate. Beck Decl. ¶ 5, Wolfman Decl. ¶ 2. After law school, he served as a law clerk for R. Lanier Anderson, III, of the U.S. Court of Appeals for the Eleventh Circuit. *Id.* Thereafter, from 1985 to early 1990, he was a staff attorney at Legal Services of Arkansas, a civil legal services program headquartered in Little Rock, Arkansas. *Id.* Mr. Wolfman has argued four cases before the Supreme Court, has been lead counsel in about a dozen others, and, as co-counsel to his PCLG colleagues and others, has had substantial involvement in several dozen more. *Id.* He has also been lead counsel in approximately fifty federal court and state court

---

[2] Plaintiffs are entitled to an award of their current fee rate, as opposed to their historical rate. *R.V.*, 407 F.3d at 83; *Does*, 448 F. Supp. 2d at 141-42.

appeals. *Id.* Mr. Wolfman currently teaches a course on appellate courts at Harvard Law School, and has previously taught similar courses at Stanford Law School, Georgetown University Law Center, and American University Law School. *Id.* Mr. Wolfman directly supervised Mr. Beck's work in the case. *Id.*

Mr. Beck has been an attorney at PCLG since 2005, where he litigates a variety of cases, most of them involving First Amendment law. Beck Decl. ¶ 4. Before coming to PCLG, Mr. Beck served as a law clerk to Michael R. Murphy of the United States Court of Appeals for the Tenth Circuit. *Id.* Mr. Beck graduated summa cum laude in 2004 from the University of Illinois College of Law, where he was Articles Editor of the University of Illinois Law Review and received the Outstanding Clinical Student award for his work in the college's Civil Litigation Clinic. *Id.*

Based on the Laffey rates for lawyers of equivalent experience, plaintiffs seek the reasonable rate of $440 per hour for Mr. Wolfman and $215 per hour for Mr. Beck.[3]

**B.     Number of Hours Reasonably Expended**

**1.     The Total Time Spent on the Case Is Reasonable.**

"In computing the fee, counsel for prevailing parties should be paid, as is traditional with attorneys compensated by a fee-paying client, for all time reasonably expended on a matter."

---

[3] This Court has previously approved hourly rates of $210 for experienced attorneys, $150 for associates, and $120 for less-experienced attorneys practicing in the Northern District. *See J.S. v. Crown Point Cent. Sch. Dist.*, No. 06-159, 2007 WL 475418, at *5 (N.D.N.Y. Feb. 9, 2007); *see also Arbor Hill Concerned Citizens Neighborhood Ass'n v. County of Albany*, 419 F. Supp. 2d 206, 211 (N.D.N.Y. 2005). In a more recent case, the Court approved an hourly rate of $250 for a lawyer in Syracuse. *Doe v. Kaiser*, No. 06-1045, 2007 WL 2027824, at *10 (N.D.N.Y. Jul. 9, 2007). As noted in *Crown Point Central School District*, the Court may take judicial notice of reasonable rates found in previous cases, but must also evaluate any evidence proffered by the parties. 2007 WL 475418, at *5 (internal quotation omitted). Moreover, as noted above, the Second Circuit has recently "clarif[ied] that a district court may use an out-of-district hourly rate—or some rate in between the out-of-district rate sought and the rates charged by local attorneys—in calculating the presumptively reasonable fee if it is clear that a reasonable, paying client would have paid those higher rates." *Arbor Hill*, 493 F.3d at 119.

*Hensley*, 461 U.S. at 430 n.4 (internal quotation omitted). Plaintiffs request compensation for 258.2 hours spent on the case from drafting the complaint through the Court's decision on summary judgment. Of this time, 48 hours were spent on travel and should be reimbursed at half the prevailing rate. *Patterson v. Julian*, 250 F. Supp. 2d 36, 45 (N.D.N.Y. 2003), *rev'd on other grounds*, 370 F.3d 322 (2d Cir. 2004) ("Travel time is generally reimbursed at half of the hourly prevailing rate."). Plaintiffs also request fees for 12 hours spent drafting this motion and accompanying declaration. *See Weyant v. Okst*, 198 F.3d 311, 316 (2d Cir. 1999) ("[A] reasonable fee should be awarded for time reasonably spent in preparing and defending an application for § 1988 fees . . . whenever underlying costs are allowed.") (internal quotation omitted). The hours for which plaintiffs' seek compensation are attached to the Beck Declaration as Exhibit 2. All the time entries were contemporaneously recorded and copied from electronic time records kept by counsel. *Id.* ¶ 9.

      Plaintiffs' counsel litigated this case in a succinct and economical fashion, as shown by the fact that the case proceeded from complaint to final judgment in less than five months. Plaintiffs' litigation of this case was particularly economical in light of the complex legal issues involved. Plaintiffs briefed and argued not only the cross motions for summary judgment, but their own motion for a preliminary injunction and their response to defendants' motion to dismiss on multiple procedural and jurisdictional grounds. Plaintiffs' counsel approached defendants' counsel to try to agree to the facts, and drafted a set of joint stipulations that made discovery and trial unnecessary, thereby saving both the parties and the Court a significant amount of time. *Id.* ¶ 12.

      The majority of the work in this case was performed by Mr. Beck, whose work was reviewed and edited as necessary by Mr. Wolfman. By dividing their effort in this way, counsel

were able to take advantage of Mr. Beck's lower hourly rate to substantially reduce their total requested fee. Moreover, Mr. Beck was able to draw on the collective experience of other PCLG attorneys who reviewed, commented on, and proofread filings. Beck Decl. ¶ 6. In the exercise of billing judgment, plaintiffs are not seeking a fee for these attorneys' time. *Id.* In particular, we have excluded the time spent by PCLG attorney Scott Nelson, a 1984 law graduate admitted to the Northern District, who sponsored Mr. Beck's and Mr. Wolfman's admission pro hac vice, provided advice on local procedure, and reviewed all significant filings. *Id.* PCLG fellow Emma Cheuse and two PCLG summer interns also provided substantial research assistance but plaintiffs are not requesting fees for their time. *Id.* Mr. Beck also benefited from his experience reviewing and writing comments on a prior draft of New York's amended rules—time that he did not record for this fee motion but that nonetheless enabled him to prepare the filings in this case more efficiently than he otherwise would have been able to do. *Id.* ¶ 13.

Considerable billing judgment was used in recording the hours reflected in Exhibit 2. For example, plaintiffs' counsel did not record time spent on brief phone calls, emails, and meetings with clients and co-counsel. Beck ¶ 10. Thus, the time recorded reflects less than all the hours actually spent by PCLG on the case. *Id.* Throughout the case, plaintiffs' counsel were careful not to duplicate efforts and have scrutinized their time charges to ensure that any duplication has been eliminated. *Id.* ¶ 11. Moreover, counsel have exercised billing judgment and have eliminated numerous time entries and pared down the remaining time entries. *Id.* The only charges that are arguably duplicative are the presence of more than one attorney at court during the two hearings held in this case. *Id.* However, each of these appearances is justified. Mr. Wolfman is the senior attorney on the case and was supervising Mr. Beck's handling of the litigation. *Id.* Under § 1988, prevailing parties are not barred from receiving fees for sending a

second attorney to court to observe and assist. *N.Y. Ass'n for Retarded Children*, 711 F.2d at 1146. Indeed, given the importance of the hearings to the litigation, most law firms would have had both a senior attorney and an associate in attendance.

### 2.    Plaintiffs' Counsel Achieved a High Degree of Success.

The most critical factor to deciding the reasonableness of a request for fees is the "degree of success obtained." *Hensley*, 461 U.S. at 436. Here, plaintiffs prevailed in their case against nearly all the advertising regulations challenged in their complaint, winning a permanent injunction against enforcement of rules prohibiting attorney advertisements that contain endorsements and testimonials about a pending matter; portrayals of fictitious law firms; portrayals of judges; techniques to obtain attention that lack relevance to selecting counsel; portrayals of attorneys with characteristics unrelated to legal competence; nicknames, monikers, mottos, and trade names that imply an ability to obtain results in a matter; and pop-up or pop-under advertisements. Moreover, plaintiffs substantially prevailed in their challenge to the rules as they apply to nonprofit communications. Based on defendants' concession at oral argument that enforcement of the rules against communications by nonprofit attorneys would be unconstitutional, the Court adopted a narrowing construction of the rules to exclude these communications. The Court's construction of the statute is not obvious from its plain language and will significantly benefit nonprofit attorneys in the state who might otherwise have been chilled in their communications.

Where, as here, "a plaintiff has obtained excellent results, his attorney should recover a fully compensatory fee" that "encompass[es] all hours reasonably expended on the litigation." *Hensley*, 461 U.S. at 435; *see also LeBlanc-Sternberg*, 143 F.3d at 758 ("An award of fees is [] appropriate if the plaintiff's suit resulted in the granting of significant injunctive relief . . . .").

Not only did plaintiffs achieve an excellent outcome in this case, but they obtained an injunction against enforcement of unconstitutional rules that will benefit many attorneys and consumers in the state. When a plaintiff obtains an injunction that carries a "systemic effect of importance" or serves a "substantial public interest," a substantial fee award is justified. *LeBlanc-Sternberg*, 143 F.3d at 758, 759-60 (internal quotations omitted).

The Court granted judgment to the state on only two of the challenged rules: the provision restricting use of certain domain names and the thirty-day moratorium on contacting victims. These rules were so closely related to the remaining provisions that plaintiffs' time spent challenging them cannot be separated from the remaining time spent on the case. "A plaintiff's lack of success on some of his claims does not require the court to reduce the lodestar amount where the successful and the unsuccessful claims were interrelated and required essentially the same proof." *Kerin v. U.S. Postal Serv.*, 218 F.3d 185, 194 n.6 (2d Cir. 2000) (internal quotation omitted). Plaintiffs' challenge to the domain-name restrictions in this case received almost no independent discussion by either party, and although the issue of the thirty-day moratorium did receive some independent treatment, the law governing that provision was rooted in the same set of Supreme Court and Second Circuit precedents governing regulations of commercial speech and depended on the same proof—the bar's task force report and related evidence submitted jointly by the parties—as plaintiffs' other claims. As the Second Circuit has explained, "if the plaintiff won substantial relief, and all his claims for relief involved a common core of facts or were based on related legal theories, so that much of counsel's time was devoted generally to the litigation as a whole, making it difficult to divide the hours expended on a claim-by-claim basis, there should be a fee award for all time reasonably expended." *LeBlanc-Sternberg*, 143 F.3d at 762 (internal quotations and alterations omitted). Plaintiffs' counsel should therefore receive fees

for all time spent on the litigation.

**II.    Costs**

"[A]ttorney's fees awards include those reasonable out-of-pocket expenses incurred by attorneys and ordinarily charged to their clients." *Id.* at 763 (internal quotation omitted). In an exercise of billing judgment, plaintiffs are not requesting reimbursement for telephone and photocopying costs related to this litigation. Beck Decl. ¶ 15. However, counsel did incur airfare and hotel costs related to travel to and from Syracuse. *Id.* Identifiable out-of-pocket travel expenses are generally recoverable under § 1988. *See id.*; *Kuzma v. IRS*, 821 F.2d 930, 933-34 (2d Cir. 1987). Plaintiffs therefore seek recovery of $1856.04 in travel expenses. Beck Decl. ¶ 15. A bill of costs setting forth taxable costs will be filed separately.

<div align="center">

**CONCLUSION**

</div>

Plaintiffs respectfully request that the Court award attorneys' fees in the amount of $59,255.50, and costs in the amount of $1856.04.

<div style="margin-left:40%">

Respectfully submitted,

  /s/ Gregory A. Beck
Gregory A. Beck
N.D.N.Y. Bar Roll No. 514293 (pro hac vice)
Brian Wolfman
N.D.N.Y. Bar Roll No. 514292 (pro hac vice)
PUBLIC CITIZEN LITIGATION GROUP
1600 20th St., NW
Washington, DC 20009
Phone: (202) 588-1000
Fax: (202) 588-7795
Email: gbeck@citizen.org
           brian@citizen.org
           snelson@citizen.org

*Counsel for Plaintiffs*

</div>

September 4, 2007