UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| JAMES L. ALEXANDER, *et al.*, <br><br> Plaintiffs, <br><br> v. <br><br> THOMAS J. CAHILL, *et al.*, <br><br> Defendants. | Civil Action No. 5:07-cv-00117-FJS-GHL |

**REPLY MEMORANDUM IN SUPPORT OF PLAINTIFFS'
MOTION FOR ATTORNEYS' FEES AND COSTS**

Defendants do not contest that plaintiffs' counsel achieved a high degree of success in this case and, at least as to attorney Gregory A. Beck, litigated it in a succinct and economical fashion. Instead, defendants argue that Mr. Beck should not be paid the customary hourly rate for lawyers with comparable experience in his place of business and that Brian Wolfman, the senior attorney on the case, should be denied *any* fees for his time. Defendants are wrong on both counts. The Second Circuit in *Arbor Hill Concerned Citizens Neighborhood Association v. County of Albany* rejected defendants' proposed approach for establishing a reasonable hourly rate. 493 F.3d 110 (2d Cir. 2007). Moreover, courts regularly award fees for both a junior and senior attorney in a case, in part because they recognize that delegating work to a less experienced attorney results in lower overall fees. Plaintiffs have already exercised considerable billing judgment in this case and have requested a total fee that is reasonable and modest. The requested fees should therefore be granted in full. In support of this memorandum, plaintiffs submit the attached second declarations of Brian Wolfman and Gregory A. Beck.

I.  **Plaintiffs' Requested Hourly Rates Are Reasonable.**

    A.  **The Second Circuit in *Arbor Hill* Rejected Defendants' Proposed Methodology for Establishing a Reasonable Hourly Rate.**

Defendants first argue that plaintiffs' requested hourly rate is excessive because it is not comparable to prevailing rates in the Northern District of New York. Opp. Mem. at 3. Defendants' argument has already been considered and rejected by the Second Circuit in *Arbor Hill*, 493 F.3d 110.[1]

In *Arbor Hill*, plaintiffs requested fees of $483,948.64 for work completed by three law firms in a case filed and litigated in this district. *Arbor Hill Concerned Citizens Neighborhood Ass'n v. County of Albany*, 419 F. Supp. 2d 206, 208 (N.D.N.Y. 2005). One of the firms requesting fees was based in Manhattan and asked for fees at the rate prevailing in that market. *Id.* at 208-09. The district court declined to award fees at the higher rate, holding that the prevailing rate in the forum was the required rate except for "rare exceptions" where a different rate is justified by the special expertise of non-local counsel or the unwillingness of local counsel to take the case. *Id.* at 209, 210-11. Noting that plaintiffs had presented no evidence that firms in the Northern District were unable or unwilling to take the case, the court found no special circumstances that justified out-of-district rates. *Id.* at 210-11.

On appeal, the Second Circuit held that the district court had "applied the forum rule too strictly." *Arbor Hill*, 493 F.3d at 121. Although acknowledging that rates must be based on the "prevailing hourly rate in the community," *id.* at 118 (internal quotations omitted), the court held that it was "too simplistic" to equate the relevant community with the geographical district where the court sits, *id.* at 120. Thus, the Second Circuit held that courts should no longer use a two-

---

[1] Defendants do not dispute plaintiffs' methodology for determining the prevailing hourly rate in the Washington, DC area. As plaintiffs have explained, numerous courts have used the Laffey Matrix to determine reasonable fees of Washington-based counsel. *See* Mem. in Supp. of Pls.' Mot. for Attorneys' Fees and Costs, at 5-6.

step process of first calculating a presumptively reasonable fee based on in-district rates and then requiring plaintiffs to rebut this presumption on a showing of "special circumstances." *Id.* at 111-12. Instead, courts should initially determine the reasonable hourly rate—which may or may not be the prevailing rate in the forum—and then calculate the reasonable fee based on this reasonable rate. *Id.* at 111-12, 118-21. Under *Arbor Hill*, the Court "may use an out-of-district hourly rate—or some rate in between the out-of-district rate sought and the rates charged by local attorneys" if those rates are reasonable considering all the circumstances of the case. *Id.* at 119.

In this case, plaintiffs demonstrated that out-of-district rates are reasonable by submitting evidence that their attorneys were retained for their special expertise in constitutional issues of lawyer advertising, Beck Decl. ¶ 3, that no comparable groups exist in the Northern District of New York, *id.*, and that plaintiffs were unable to find pro bono counsel in New York willing to take the case, *id.* ¶ 7. Defendants make no attempt to respond to these points, instead relying on past cases that awarded the prevailing rate in the forum. Defendants' approach replicates the district court's error in *Arbor Hill* and, for this reason, should be rejected.[2]

### B. Public Citizen's Fees Should Not Be Reduced Because It Has a Non-Monetary Interest in the Subject Matter of the Case.

Defendants next suggest that the rates of plaintiffs' attorneys should be reduced because Public Citizen has an organizational "interest" in challenging the regulations at issue in this case. Opp. Mem. at 4-5. Public Citizen, however, has no *financial* interest in the outcome of the

---

[2] Even before *Arbor Hill* lowered the relevant standard, the Second Circuit recognized that out-of-district fees could be justified in circumstances such as those in this case—where counsel has special expertise or local counsel is unwilling to take the case. *See R.V. v. N.Y. City Dep't of Educ.*, 407 F.3d 65, 81 n.17 (2d Cir. 2005); *Luciano v. Olsten Corp.*, 109 F.3d 111, 116 (2d Cir. 1997); *In re "Agent Orange" Prod. Liability Litig.*, 818 F.2d 226, 232 (2d Cir. 1987); *Polk v. N.Y. State Dep't of Corr. Servs.*, 722 F.2d 23, 25 (2d Cir. 1983). As the Second Circuit has noted, qualified pro bono counsel would be less likely to take meritorious cases in a district if they were denied their usual rate. *See R.V.*, 407 F.3d at 81.

case—its only interest is in its mission of protecting consumers and upholding the Constitution. To reduce Public Citizen's fees because of its historical commitment to this mission would be to hold that nonprofit organizations, because of their devotion to the public interest, are entitled to lower fees than attorneys who customarily charge for their services. Such a result would not only be patently unfair, it would fly in the face of longstanding Supreme Court and Second Circuit precedent holding that "courts must avoid decreasing reasonable fees because the attorneys conducted the litigation more as an act of pro bono publico than as an effort at securing large monetary returns." *Reiter v. MTA N.Y. City Transit Auth.*, 457 F.3d 224, 233 (2d Cir. 2006); *see also Blum v. Stenson*, 465 U.S. 886, 893-94 (1984) (rejecting the contention that awarding fees at market rates would "confer an unjustified windfall or subsidy upon legal services organizations" and holding that "[i]t is [] clear from the legislative history that Congress did not intend the calculation of fee awards to vary depending on whether plaintiff was represented by private counsel or by a nonprofit legal services organization") (internal quotation omitted); *Miele v. N.Y. Teamsters Conf. Pension & Ret. Fund*, 831 F.2d 407, 409 (2d Cir. 1987).

Defendants rely in support of their position on dicta from the Second Circuit's decision in *Arbor Hill* stating that courts may consider non-monetary interests that may cause reasonable clients to expect reduced fees, including a firm's interest in improving its reputation and advancing societal goals. Opp. Mem. at 4-5. Because the court was addressing the requested fees of a New York law firm, its holding was apparently meant to suggest that large law firms may, in some cases, be willing to offer a reduced rate to handle certain prestigious cases. But the court's logic does not extend to public-interest organizations, which charge no usual fees that they could reduce and in many cases depend on court-awarded fees for their survival.

Nevertheless, realizing that *Arbor Hill*'s dicta could be interpreted, as defendants

interpret it here, to suggest that nonprofit attorneys should receive reduced fees, twenty-nine public-interest organizations, legal services organizations, and civil rights firms filed an amicus curiae brief in support of plaintiffs' motion for rehearing en banc in *Arbor Hill*. *See* Brief for 29 Public Interest Organizations as Amici Curiae Supporting Plaintiffs-Appellants' Motion for Rehearing, *Arbor Hill Concerned Citizens Neighborhood Ass'n*, 493 F.3d 110 (06-0086). In response to the motion, the *Arbor Hill* panel issued an amended opinion, clarifying that its decision "in no way suggests that attorneys from non-profit organizations or attorneys from private law firms engaged in pro bono work are excluded from the usual approach to determining attorneys' fees." *Arbor Hill*, 493 F.3d at 112 n.2. Thus, *Arbor Hill* worked no change in the longstanding rule that nonprofit public-interest attorneys should be treated no differently than attorneys who customarily receive fees for their work.

**II.     The Total Time Spent Litigating This Case Was Reasonable.**

Defendants concede that the time spent by Mr. Beck on the case was reasonable. Opp. Mem. at 5. They argue, however, that Mr. Wolfman "acted largely in a mentoring and reviewing function for Mr. Beck" and that the approximately forty hours spent by Mr. Wolfman on the case should therefore be denied in their entirety. *Id.* at 5-7. Alternatively, defendants argue that Mr. Wolfman's hourly rate should be reduced for the same reason. *Id.* at 3-4.

As defendants recognize, *id.* at 6, prevailing parties are not barred from receiving fees for more than one attorney. *N.Y. State Ass'n for Retarded Children, Inc. v. Carey*, 711 F.2d 1136, 1146 (2d Cir. 1983); *see also Fauntleroy v. Staszak*, 3 F. Supp. 2d 234, 238-39 (N.D.N.Y. 1998) (awarding fees for three attorneys); *McKever v. Vondollen*, 681 F. Supp. 999, 1003 (N.D.N.Y. 1988) (holding that "mere characterization of the use of two attorneys as duplicitous is insufficient" to show that use of two attorneys was unreasonable). Although courts have the

authority to reduce fees when a case is "overstaffed," *Hensley v. Eckerhart*, 461 U.S. 424, 434 (1983), there was no overstaffing in this case. Plaintiffs seek recovery for the time of only two attorneys, and Mr. Wolfman's request for only about forty hours of time throughout the entire case is modest, especially given the high degree of success attained by plaintiffs.

Defendants dispute Mr. Wolfman's individual time entries, suggesting that fees should not be awarded for time spent "mentoring" or "training" Mr. Beck. Opp. Mem. at 5, 7. Defendants, however, are wrong to characterize Mr. Wolfman's contributions to the case as mentoring or training. As is clear from Mr. Wolfman's time records, his contribution to the case involved reviewing, editing, and offering substantive comments on Mr. Beck's work. *See* Second Wolfman Decl. ¶ 3; Beck Decl., Exh. 2. The time spent by Mr. Wolfman on these activities was reasonable, totaling not more than a few hours on each major filing from the complaint through the motion for summary judgment. *Id.* Defendants' complaints that individual time entries are excessive are exaggerated. Defendants dispute, for example, one .4 hour entry for reviewing and discussing a letter regarding stipulations, Opp. Mem. at 7, but the total time spent by Mr. Wolfman on activities related to the stipulations was only half an hour, an entirely reasonable amount of time to spend on stipulations that disposed of all factual issues in the case.

Moreover, Mr. Beck spent much more time than is reflected in plaintiffs' fee motion informally discussing this case with Mr. Wolfman and other Public Citizen attorneys. Beck Decl. ¶ 6. In an exercise of billing discretion, plaintiffs have not sought recovery for this time. *Id.* Moreover, plaintiffs have not sought fees for substantive contributions made by Public Citizen attorneys Scott Nelson, Emma Cheuse, and two law students who completed research projects related to the case. *Id.* Thus, plaintiffs' requested fees already represent the exercise of considerable billing judgment; there is no need for the Court to further trim the modest number

of remaining hours requested by Mr. Wolfman.

In cases represented by private commercial law firms or government counsel, parties are almost never represented by only a single attorney, and are often represented by three or more attorneys. *See* Second Wolfman Decl. ¶ 4. Moreover, senior attorneys almost invariably accompany junior associates to court. *Id.* ¶ 5. Courts have long recognized this basic fact of modern litigation and frequently award fees for the time of both a partner and an associate. *See Commission Express Nat'l, Inc. v. Rikhy*, No. 03-4050, 2006 WL 385323, at *7 (E.D.N.Y. 2006) (rejecting the argument that an associate was "obligated to do all the work entirely on his own without consulting with a more senior attorney or partner" and noting that "[i]t is extremely common for lawyers in a firm to work together and for more junior attorneys to consult with more senior attorneys."); *Bleecker Charles Co. v. 350 Bleecker Street Apartment Corp.*, 212 F. Supp. 2d 226, 230 n.5 (S.D.N.Y. 2002) (holding that the defendant's attack on the use of more than one lawyer to write and edit briefs "mist[ook] professionalism that resulted in high-quality advocacy for duplicative effort"); *Broome v. Biondi*, 17 F. Supp. 2d 230, 235 (S.D.N.Y. 1997) ("[H]aving two attorneys research and participate in drafting a brief is a common practice and therefore not necessarily duplicative") (internal quotation omitted). Indeed, it would have been irresponsible to have left Mr. Beck, a 2004 law graduate, to litigate the case unsupervised. *See* Second Wolfman Decl. ¶ 3; *Copeland v. Marshall*, 641 F.2d 880, 903 n.50 (D.C. Cir. 1980) (denying fees for unsupervised time spent by an associate and holding that "[y]oung associates' efforts will be fully productive only if guided by proper supervision by experienced litigators").[3]

---

[3] Other courts have also awarded fees for work by multiple attorneys. *Gay Officers Action League v. Puerto Rico*, 247 F.3d 288, 297 (1st Cir. 2001) ("[T]he mere fact that more than one lawyer toils on the same general task does not necessarily constitute excessive staffing. Effective preparation and presentation of a case often involve the kind of collaboration that only occurs when several attorneys are working on a single issue.") (citations omitted); *A.J. by L.B. v. Kierst*, 56 F.3d 849, 864 (8th Cir. 1995) ("We are not aware of any cases [] which hold that a

If senior attorneys were denied fees for time spent supervising associates, they would be forced to handle much more of the litigation themselves at their higher billing rates. Numerous courts in New York and elsewhere have noted that, for this reason, using a second attorney normally leads to *lower* overall fees. *Catanzano v. Doar*, 378 F. Supp. 2d 309, 322 (W.D.N.Y. 2005) (noting that use of multiple attorneys "at times it might be *more* reasonable than using only one or two attorneys, since lower-paid junior attorneys, student interns and paralegals can perform some work at less cost than senior attorneys"); *Etna Prods. Co., Inc. v. Q Marketing Group, Ltd.*, No. 03-3805, 2005 WL 2254465, at *4 (S.D.N.Y. 2005) (approving use of more than one attorney and noting that "[t]he economic interests of clients usually is served by it because the more routine tasks can be done at lower cost by personnel with less training and experience who consequently are paid less and billed at lower rates"); *Harb v. Gallagher*, 131 F.R.D. 381, 387 (S.D.N.Y. 1990) (holding that time spent reviewing and editing an associate's research and drafting is "not a duplication of effort . . . but, rather, a way to prepare a case in an efficient manner"). Indeed, if Mr. Wolfman had handled the case directly instead of supervising Mr. Beck, plaintiffs would have been vulnerable to the argument that their fees should be reduced for failing to delegate to a less expensive attorney. *See* Second Wolfman Decl. ¶ 6. That was the result in the only case cited by defendants in support of their argument, *Shannon v. Fireman's Fund Ins. Co.*, where the court reduced fees claimed by a partner at a law firm because his billing records "show[ed] numerous entries for tasks more appropriately handled by younger associates." 156 F. Supp. 2d 279, 301-02 (S.D.N.Y. 2001). It is therefore ironic that defendants cite *Shannon* for the proposition that fees should also be denied to a senior attorney

---

court may reduce attorneys' fees *solely* on the basis that multiple attorneys helped to secure a prevailing party's success."); *Johnson v. University College of Univ. of Ala. in Birmingham*, 706 F.2d 1205, 1208 (11th Cir. 1983) ("An award for time spent by two or more attorneys is proper as long as it reflects the distinct contribution of each lawyer to the case and the customary practice of multiple-lawyer litigation.").

who *did* delegate the majority of the work in a case.

### III.    Amount of Fees

In addition to the $59,255.50 in fees and $1856.04 in costs reflected in plaintiffs' motion for fees, plaintiffs request an additional $2911.50 in fees for the 12.6 hours spent researching and drafting this reply memorandum. *See* Second Beck Decl. Contemporaneous records reflecting this time is attached to the Second Beck Declaration as Exhibit 1. Thus, plaintiffs request total fees of $62,167 and total costs of $1856.04.

### **CONCLUSION**

Plaintiffs respectfully request that the Court award attorneys' fees in the amount of $62,167, and costs in the amount of $1856.04.

Respectfully submitted,

  /s/ Gregory A. Beck
Gregory A. Beck
N.D.N.Y. Bar Roll No. 514293 (pro hac vice)
Brian Wolfman
N.D.N.Y. Bar Roll No. 514292 (pro hac vice)
PUBLIC CITIZEN LITIGATION GROUP
1600 20th Street, NW
Washington, DC 20009
Phone: (202) 588-1000
Fax: (202) 588-7795
Email: gbeck@citizen.org
            brian@citizen.org

October 1, 2007        *Counsel for Plaintiffs*